No. 95-345

IN THE SUPREME COURT OF THE STATE OF MONTANA

1996

STATE OF MONTANA,

    Plaintiff and Respondent,

v.

TERRY LEE HAGBERG,

    Defendant and Appellant.

FILED

JUN 18 1996

Ed Smith
CLERK OF SUPREME COURT
STATE OF MONTANA

APPEAL FROM:   District Court of the Tenth Judicial District,
In and for the County of Fergus,
The Honorable John R. Christensen, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:

    Craig R. Buehler, Lewistown, Montana

    For Respondent:

    Hon. Joseph P. Mazurek, Attorney General, John
Paulson, Assistant Attorney General, Helena,
Montana; Thomas P. Meissner, Fergus County Attorney,
Lewistown, Montana

Submitted on Briefs: January 25, 1996

Decided: June 18, 1996

Filed:

Clerk

Justice James C. Nelson delivered the Opinion of the Court.

Defendant Terry Lee Hagberg (Hagberg) appeals from the jury verdict finding him guilty of the charges of felony assault and misdemeanor resisting arrest and from the Tenth Judicial District Court, Fergus County's sentence and judgment. We affirm.

## ISSUES

1. Did the District Court err in denying Hagberg's motion to dismiss the information on grounds that the alleged facts failed to state an offense?

2. Did the District Court err in denying Hagberg's motion to dismiss alleging that he had been denied his right to a speedy trial?

3. Did the District Court err in admitting evidence of Hagberg's prior acts?

## BACKGROUND

At approximately 10:20 p.m. on February 28, 1994, Hagberg and his wife, Eleanor, stopped to get something to eat at the Hackamore Supper Club in Lewistown, Montana. After learning that the restaurant was closed, Hagberg and Eleanor returned to their truck. The bar and restaurant employees heard yelling and banging on the truck and called the sheriff's department for assistance. Hagberg left before Deputy Sheriff Jack Barney and Detention Officer Troy Eades arrived. After hearing the description of the vehicle over the radio, Highway Patrol Officer Mantooth spotted the vehicle, turned around, and caught up with it. The vehicle pulled out to

2

pass a car, stayed in the passing lane, and while in the no-passing zone, passed another car and continued over a hill.

After Officer Mantooth turned on his top lights, the vehicle swerved a little bit and pulled off the road. Officer Mantooth pulled in behind the Hagberg's and got out of his car. As he started walking toward the vehicle, Eleanor got out of the driver's side. Officer Mantooth asked her to get back in the vehicle and roll down her window, to which she responded that it did not work. Officer Mantooth reached in the door with his left hand and rolled down the window, stating that it did indeed work. Hagberg then said "why don't you let her shut the door?" Officer Mantooth then flipped his flashlight over to glance at Hagberg. As he did so, he noticed an empty holster on the seat between them. He could clearly see that the holster did not have a gun in it. Officer Mantooth looked back over to Hagberg who had bent over with his arms between his legs and his hands by the floor. Officer Mantooth noticed that Hagberg had a glazed look "like nobody was home . it spooked you" and smelled like an alcoholic beverage.

At that time, Officer Mantooth realized that he needed to back off from the situation; he told Eleanor that when she found her driver's license, registration, and insurance to bring them back to his patrol car. Officer Mantooth radioed to Deputy Barney for back up assistance because he thought he had a situation with a man with a gun. Eleanor started the vehicle and pulled forward as though she was going to leave, but stopped after Officer Mantooth hit his airhorn. Officer Mantooth testified that when the vehicle pulled

forward, he thought he was going to have a pursuit. However, the Hagberg's stopped and waited in their vehicle and Officer Mantooth waited in his car until assistance arrived.

When Deputy Barney and Troy Eades arrived, Officer Mantooth told them that he thought Hagberg had a gun, that there was an empty holster on the seat, that Eleanor reacted nervously, that he thought Eleanor was under the influence of alcohol, and that he could not do anything with Hagberg or Eleanor until he was sure that he was safe and that Hagberg no longer had a gun. Based on his training in defending against hostile situations, Officer Mantooth determined that he would approach the vehicle from the passenger's side, see if he could get Hagberg to come out and if he would not come out voluntarily, he would have to pull Hagberg out and put him down on the ground.

Officer Mantooth approached the passenger side of the vehicle, opened the door, and said' "I need you to step out." Hagberg attempted to close the door on Officer Mantooth's shoulder while his other hand was still down between his knees. Officer Mantooth then grabbed Hagberg, spun him out of the truck, and brought him down on the ground. Hagberg had a loaded black single-action revolver in his hand. Officer Mantooth grabbed the hammer of the revolver to prevent the gun from discharging. As Deputy Barney came around the back of the truck, Officer Mantooth was pulling Hagberg out of the truck. Deputy Barney helped wrench the gun from Hagberg. He unloaded and secured the gun while Officer Mantooth tried to handcuff Hagberg. Officer Mantooth and Troy Eades had to

4

physically restrain Hagberg and wrestle his hands behind his back in order to handcuff him.

Officer Mantooth then heard Eleanor screaming that she wished that she had not left her gun at home. Eleanor had locked the door and would not open it. After Deputy Barney reached in from the passenger's side and removed the keys from the ignition, Eleanor unlocked the door but still refused to come out. Officer Mantooth removed her from the truck and placed her in handcuffs. Eleanor yelled "Honey, they are violating me" to which Hagberg returned a rude comment and threatened to kill the officers. The officers took Hagberg and Eleanor to the Fergus County jail.

On March 30, 1994, the Fergus County Attorney filed an information in the Tenth Judicial District Court, charging Hagberg with felony assault and misdemeanor resisting arrest. The State supported its motion for leave to file the information with an affidavit setting forth the facts of the charges. At his arraignment, Hagberg entered a not guilty plea to each charge. The State filed a motion to revoke bail alleging that Hagberg had violated the conditions of his release by committing additional crimes and by using alcohol. At the July 25, 1994 hearing on the motion, Hagberg admitted the violations and stated that he would voluntarily enter an inpatient chemical dependency program. The District Court entered an order for the program which was subsequently rescheduled.

On July 25, 1994, the State filed a notice of intent to introduce evidence of other acts of Hagberg's which occurred on

5

March 4, 1979 and on October 24, 1993. Hagberg filed an objection to the use of the other acts evidence. On September 28, 1994, the District Court issued an order releasing Hagberg from bail and setting the trial for November 9, 1994. For reasons not reflected in the District Court file, the trial did not occur as scheduled in November. The district court judge's term ended in January 1995, therefore the new district court judge held a scheduling conference where he reset the trial for April 3, 1995. On March 1, 1995, Hagberg filed a motion to dismiss for lack of a speedy trial.

On March 10, 1995, Hagberg filed another motion to dismiss, this motion alleging that the arrest had been illegal. Following a hearing, the District Court denied this second motion to dismiss. The State withdrew its request to introduce evidence of Hagberg's 1979 incident, yet restated its request to introduce evidence of Hagberg's 1993 incident. On the first day of trial, the District Court ruled that the State could introduce evidence of the 1993 incident.

The jury returned a guilty verdict on both the felony assault charge and the misdemeanor resisting arrest charge. The District Court sentenced Hagberg to 44 days in the Fergus County Jail for which Hagberg received credit for 44 days he previously served; 3 years in the custody of the Department of Corrections, all of which were suspended; and 2 years in the custody of the Department of Corrections for use of a weapon. Hagberg appeals from the jury verdict and from the sentence and judgment entered by the District Court.

DISCUSSION

1. Did the District court err in not dismissing the information on the grounds that the facts failed to state a crime?

Hagberg's arguments are twofold. First, he argues that his arrest was illegal. Second, he argues that the facts did not rise to the level of an offense. The State counters that the arrest was a legal warrantless arrest and that the affidavit in support of the information set forth sufficient facts to support a felony assault conviction. We review a motion to dismiss to determine whether the district court abused its discretion in granting or denying the motion. State v. Pinkerton (1995), 270 Mont. 287, 290, 891 P.2d 532, 535.

Section 45-5-202, MCA, provides that "A person commits the offense of felony assault if he purposely or knowingly causes: (a) bodily injury to another with a weapon; (b) reasonable apprehension of serious bodily injury in another by use of a weapon; or (c) bodily injury to a peace officer or a person who is responsible for the care or custody of a prisoner."

Hagberg relies solely on State v. Merseal (1975), 167 Mont. 412, 538 P.2d 1366, for his argument that the facts fail to support the charge of felony assault. In Merseal, we determined whether substantial evidence supported the verdict. We held that the record was deficient of credible evidence in support of the conclusion that the defendant's conduct placed the officer in reasonable apprehension or fear. Merseal, 538 P.2d at 1368. Specifically, the officer presented inconsistent testimony on

7

whether he would have to shoot at the defendant if the defendant had reached for his gun. Without first searching the car for a gun, the officer rode in the defendant's car when he knew that the defendant probably had his gun in the car. Merseal, 538 P.2d at 1368.

Merseal is distinguishable from the instant case in that there was no conflicting testimony regarding the salient facts that support Officer Mantooth's reasonable apprehension of serious bodily harm by use of a weapon. Moreover, he did not put himself in a situation like the officer in Merseal. Officer Mantooth had merely walked up to Hagberg's car to ask for Eleanor's license and registration when he saw the empty holster on the seat and Hagberg sitting with his hands between his legs. While the affidavit supporting the information may not have been artfully and comprehensively drafted, it nonetheless recited sufficient facts to indicate a probability that Hagberg committed an offense. See State v. Ramstead (1990), 243 Mont. 162, 793 P.2d 802.

In State v. Misner (1988), 234 Mont. 215, 763 P.2d 23, we addressed the issue of whether there was sufficient evidence to convict the defendant of felony assault. In Misner, the essence of the defendant's argument was that the victim neither saw nor came into close enough physical proximity to the gun. However, where the victim unequivocally testified to his apprehension of serious bodily injury, we concluded that it was not necessary that the victim personally observe the gun to experience reasonable apprehension of serious bodily injury. Misner, 763 P.2d at 25.

8

Similarly, Officer Mantooth unequivocally testified to his apprehension of serious bodily injury. He smelled alcohol, Hagberg sounded belligerent and had a glazed look on his face, there was an empty holster on the seat of the car, and Hagberg looked as though he was holding a gun out of Officer Mantooth's sight. We conclude that Officer Mantooth had reason to be apprehensive of serious bodily injury and that the State had sufficient facts on which to charge Hagberg with felony assault.

Hagberg also claims that he was illegally arrested because he had not committed nor was committing an offense before Officer Mantooth pulled him from the car.

> A peace officer may arrest a person when a warrant has not been issued if the officer has probable cause to believe that the person is committing an offense or that the person has committed an offense and existing circumstances require immediate arrest.

Section 46-6-311, MCA. Hagberg cites to Merseal to support his argument. However, Merseal did not involve a warrantless arrest. Moreover, in Merseal, we concluded that the facts may well have justified the officer drawing his weapon or placing the defendant under physical restraint although the facts may not have justified a conviction for felony assault. Merseal, 538 P.2d at 1368.

Contrary to Hagberg's arguments, there is sufficient evidence to show that Officer Mantooth had reasonable apprehension of bodily injury from Hagberg's weapon before pulling Hagberg out of the truck. Again, Hagberg's glazed and spooky look, the involvement of alcohol, the empty holster, Officer Mantooth's strong suspicions that Hagberg had a gun between his legs, and Hagberg's demeanor

9

created reasonable apprehension of serious bodily harm. Therefore, we hold that the District Court did not abuse its discretion in denying Hagberg's motion to dismiss.

2. Did the District Court err in denying Hagberg's motion to dismiss alleging that he had been denied his right to a speedy trial?

Hagberg **claims** that the District Court failed to provide him with his constitutional right to a speedy trial. The State recognizes a defendant's right to a speedy trial as guaranteed by the United States and Montana Constitutions, but contends that Hagberg was not denied that right.

The Sixth Amendment to the United States Constitution and Article II, section 24 of the Montana Constitution guarantee the right to a speedy trial to the accused in a criminal prosecution. State v. Thompson (1993), 263 Mont. 17, 31, 865 P.2d 1125, 1134. A speedy trial **claim** is a question of constitutional law. State v. Cassidy (1978), 176 Mont. 385, 388, 578 P.2d 735, 737. We review questions of law de novo to determine whether the court's interpretation of the law is correct. Carbon County v. Union Reserve Coal Co., Inc. (1995), 271 Mont. 459, 469, 898 P.2d 680, 686; Steer, Inc. v. Department of Revenue (1990), 245 Mont. 470, 474-75, 803 P.2d 601, 603.

"This Court uses the test from Barker v. Wingo (1972), 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101, to determine whether a defendant's constitutional right to a speedy trial has been violated." State v. Matthews (1995), 271 Mont. 24, 27, 894 P.2d

285, 287. This test requires a balancing of the following four factors: 1) length of the delay; 2) reason for the delay; 3) assertion of the right by the defendant; and 4) prejudice to the defendant. We weigh all four factors in light of the surrounding facts and circumstances, engaging in a sensitive balancing of the defendant's right to a speedy trial and the State's interest in public justice. State v. Weeks (1995), 270 Mont. 63, 72, 891 P.2d 477, 482.

The threshold factor, length of the delay, determines whether a full speedy trial analysis is necessary. The initial determination concerning the length of delay is made without allocation of delay to either party. Thompson, 865 P.2d at 1134-35. If the length of delay is over 200 days, the delay is presumptively prejudicial and requires further analysis. This Court has not established a precise quantification of the triggering time due to the complexity of each case and a defendant's active avoidance of trial. State v. Curtis (1990), 241 Mont. 288, 304, 787 P.2d 306, 316. In this case, the State concedes that the delay of 399 days is sufficient to raise a presumption of prejudice requiring further analysis.

In considering the second factor, reason for the delay, we allocate the delay by determining the delay attributable to each party. Thompson, 865 P.2d at 1135; Matthews, 894 P.2d at 287. In the instant case there are three segments of delay: 1) the period between the date of arrest and the first trial date (February 28, 1994 to August 22, 1994); 2) the period between the first trial

11

date and the second trial date (August 22, 1994 to November 9, 1994); and 3) the period between the second trial date and the third trial date (November 9, 1994 to April 3, 1995). Hagberg contends that none of the delay is attributable to him. The State on the other hand contends that the time between Hagberg's arrest on separate charges and the second trial date are attributable to Hagberg because the arrest led to revocation of his bail and the decision to undergo inpatient chemical dependency treatment. The State also argues that the remainder of the delay was institutional and should therefore be weighed less heavily against the State. The institutional delay was partially a result of the district court judge retiring and was not a result of oppressive pretrial tactics. Therefore, we conclude that the delay can be attributed to both Hagberg and the State but that the State's delay was largely institutional and not a result of requests for continuances or impermissible pretrial tactics.

Hagberg satisfied the third factor, assertion of the right to a speedy trial, by filing a motion to dismiss a month before the trial. In considering the fourth factor, prejudice to the defendant, this Court has identified three factors in determining prejudice: 1) pretrial incarceration, 2) anxiety and concern, and 3) impairment of defense. Thompson, 865 P.2d at 1135. Impairment of the defense is the most critical of these three factors. Hagberg asserts that he was incarcerated for 66 days after his arrest and prior to trial. However, as the State contends and the District Court noted, only 7 of those 66 days were for Hagberg's

12

initial arrest, 28 of those days resulted from Hagberg's voluntary admission into the chemical dependency treatment program and the remaining 31 days followed his subsequent arrest and bail revocation.

Hagberg also contends that he suffered from pretrial anxiety and concern yet his testimony did not elicit evidence of uncommon or extreme anxiety. Hagberg emphatically asserts that the delay impaired his defense. Specifically, Hagberg points out inconsistencies in the testimonies of the officers. However, Hagberg testified that the incident was still fresh in his memory, that witnesses were still available, and that in fact his defense had not been impaired by the passage of time.

In summary, although the delay in this case was quite long, under the circumstances, Hagberg was not able to show that the reasons for the delay were substantially the State's or that the delay prejudiced his defense. In fact, Hagberg was responsible for much of the delay. Additionally, the State's delay can be attributed to institutional factors such as the retirement of the district court judge and cannot be attributed to impermissible pretrial tactics for delay or requests for continuances. Accordingly, we conclude that the District Court correctly interpreted the law in denying Hagberg's motion to dismiss based on the alleged lack of a speedy trial.

3. Did the District Court err in admitting evidence of Hagberg's prior acts?

Hagberg contends that the District Court improperly admitted evidence of his prior acts. We review evidentiary rulings to determine whether the district court abused its discretion. State v. Pace (1995), 272 Mont. 464, 466, 901 P.2d 557, 559. The district court has broad discretion to determine whether evidence is relevant and admissible, and absent a showing of an abuse of discretion, the court's determination will not be overturned. Pace, 901 P.2d at 559.

Rule 404(b), M.R.Evid., governs the admissibility of other crimes, wrongs, or acts. It states:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

In State v. Just (1979), 184 Mont. 262, 267-68, 602 P.2d 957, 961, we held that the State had to meet four requirements before introducing evidence of other crimes, wrongs, or acts. We modified these requirements in State v. Matt (1991), 249 Mont. 136, 814 P.2d 52, setting forth the basis for admission of evidence of other crimes, wrongs, or acts as:

> 1) The other crimes, wrongs or acts must be similar.
> 2) The other crimes, wrongs or acts must not be remote in time.
> 3) The evidence of other crimes, wrongs or acts is not admissible to prove the character of a person in order to show that he acted in conformity with such character; but may be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.
> 4) Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues,

14

misleading of the jury, considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

Matt, 814 P.2d at 56.

First, the incident in the instant case is very similar to the incident in which Hagberg was involved in 1993. On October 24, 1993, Highway Patrol Officer Cal Janes observed Hagberg swerve back and forth on the southbound on-ramp of Interstate 15. The pickup then came to a stop on the side of the highway. Hagberg got out and started to urinate on the highway. Officer Janes pulled up and approached Hagberg who was having difficulty standing and had to use the door of his pickup truck for stability. As Officer Janes asked Hagberg to walk to the rear of the pickup, Hagberg told Eleanor, who was in the passenger seat, to kill Officer Janes. Officer Janes grabbed Hagberg, marched him to the back of the pickup, searched him for weapons, handcuffed him, and placed him in the back seat of the patrol car. All of the weapons in the pickup were loaded. Officer Janes charged Hagberg with driving while under the influence of alcohol.

The District Court concluded that the incident was sufficiently similar to the charged offense, that the incident was sufficiently near in time to the charged offense, that the incident was probative of Hagberg's intent during the charged offense, and that the probative value of the evidence was not outweighed by unfair prejudice to Hagberg. We agree.

A prior act need not be identical to the offense charged to be admissible under the similarity requirement of the Just rule.

15

Moreover, we review the acts rather than the charges. State v. Brogan (1995), 272 Mont. 156, 166, 900 P.2d 284, 290. In the instant case, both incidents involved possible intoxication while driving late at night, both incidents involved loaded guns in the car, and importantly, both incidents involved Hagberg displaying hostility and resistance to the officers requiring them to respond defensively to a perceived threat to their safety.

Second, October 24, 1993, and February 28, 1994, the dates of the two incidents, are not remote in time. Third, the purpose of admitting the evidence of Hagberg's prior acts was probative of Hagberg's intent during the incident which led to the present charges. The prior act was relevant to Hagberg's hostility toward the highway patrol officers who stopped his vehicle and was therefore probative of Hagberg's mental state during the assault. See State v. Matson (1987), 227 Mont. 36, 736 P.2d 971.

Finally, the District Court also correctly determined that the probative value of the prior acts evidence was not substantially outweighed by the danger of unfair prejudice to Hagberg. It is inevitable that the introduction of evidence of a prior crime will have some prejudicial effect on a defendant. State v. Anderson (Mont. 1996) ___ P.2d ___, 53 St.Rep. 172, 174. "However, when the prior crime evidence meets the first three elements of the modified just rule, the prior crime evidence necessarily carries great probative weight." Anderson, 53 St.Rep. at 174. Weighing the probative value of the prior crime evidence against the prejudice to Hagberg and considering the first three requirements of

16

admitting evidence of other acts, we conclude that the District Court did not err in allowing evidence of Hagberg's prior act.

Affirmed.

_____
Justice

We Concur:

_____
Chief Justice

_____

_____
Justices