No. 97-381

IN THE SUPREME COURT OF THE STATE OF MONTANA

1999 MT 37

STATE OF MONTANA,

Plaintiff and Respondent,

v.

MICHAEL DEAN ROULLIER,

Defendant and Appellant.

APPEAL FROM: District Court of the Twentieth Judicial District,

In and for the County of Lake,

The Honorable C. B. McNeil, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

William F. Hooks, Attorney at Law, Appellate Defender Office;

Helena, Montana

For Respondent:

Hon. Joseph P. Mazurek, Attorney General; Carol Schmidt,

Assistant Attorney General; Helena, Montana

Kim Christopher, Lake County Attorney; Polson, Montana

Submitted on Briefs: December 30, 1998

Decided: March 2, 1999

Filed:

No

_____

Clerk

Justice Terry N. Trieweiler delivered the opinion of the Court.

**¶1. The defendant, Michael Dean Roullier, was charged by information in the District Court for the Twentieth Judicial District in Lake County with felony assault. After a one-day jury trial, Roullier was convicted and given a five-year sentence for felony assault, and a consecutive two-year sentence for his use of a dangerous weapon, pursuant to § 46-18-221(1), MCA. Roullier appeals both his conviction and his sentence. We affirm his conviction, but reverse that portion of his sentence imposed pursuant to § 46-18-221(1), MCA.**

**¶2. There are three issues on appeal:**

**¶3. 1. Did Roullier file a timely notice of appeal pursuant to Rule 5(b), M.R.App.P.?**

**¶4. 2. Was there sufficient evidence to support the jury's verdict?**

**¶5. 3. Did the District Court err when it imposed the two-year sentence enhancement pursuant to § 46-18-221(1), MCA?**

FACTUAL BACKGROUND

**¶6. On September 5, 1996, Officer John Stevens of the Polson Police Department responded to a domestic disturbance report at Allison Salmon's apartment. Salmon called the police after she had a fight with her boyfriend and roommate, Michael Roullier. Roullier had broken a window and an aquarium during the dispute, and then left the apartment prior to Stevens' arrival. Stevens noted the damage, and in the process also noticed a number of snake cages to which were attached "Caution: Venomous snake" warnings. No charges were filed at that time.**

**¶7. A short time after Stevens left, Roullier returned to the apartment, where he broke a door and appeared very upset; Salmon testified that she thought Roullier was suicidal. Roullier grabbed a snake from a cage and left the apartment, at which point Salmon again called the police. Stevens and his partner, Officer Tina Schlalie,**

returned to the apartment building and chased Roullier back into the apartment.

¶8. Inside the apartment, the officers found Roullier holding the snake, with one hand on the snake's head. Stevens, who was approximately six feet away from Roullier, told him to put the snake down, but Roullier refused. Roullier told the officers to get out of his way because he wanted to leave the apartment. Roullier advanced toward the officers while motioning with the snake's head, and told them that "if this snake bites you, you're dead." The officers backed up, but refused to let Roullier leave and told him again to put the snake down. Stevens testified at trial that he "thought [Roullier] was going to try to attack me with the snake," and that he feared serious bodily injury from the snake.

¶9. Schlalie prepared to hit the snake's head with her baton, but Roullier drew the snake close to his body. Stevens then threatened to use his pepper spray on Roullier. Roullier said, "If you spray me, then I will let it bite me and I will be dead." He continued to hold the snake's head to his arm as if he was going to let it bite him, while the officers repeated their requests that he put the snake down. Roullier eventually threw the snake behind him toward the cages and was handcuffed by the officers; he told them how to handle the snake and how to return it to its cage. The officers later learned that the snake was a Rhinoceros Viper, which is a very toxic African snake.

¶10. On September 13, 1996, Roullier was charged by information in the District Court for the Twentieth Judicial District in Lake County with felony assault, based on his alleged threatened use of the snake against Stevens. Counsel was appointed to represent Roullier, and he entered a plea of not guilty. Roullier was convicted after a one-day jury trial on February 6, 1997. On March 17, 1997, the District Court entered judgment and ordered Roullier to serve a five-year sentence, with all but thirty days suspended. In addition, it ordered Roullier to serve a consecutive two-year sentence, with no time suspended, for the use of a dangerous weapon, pursuant to § 46-18-221(1), MCA.

¶11. On May 12, 1997, Roullier filed a pro se notice of appeal with the clerk of this Court. The notice of appeal was transferred to and filed in the District Court on May 21, 1997. Roullier failed to file an appellate brief, and on November 19, 1997, this Court ordered Roullier's appointed counsel to show cause why the appeal should not be dismissed for a failure to prosecute. Roullier's appointed counsel had been

unaware of Roullier's pro se appeal, and therefore sought and received an extension of time within which to proceed. He eventually withdrew as counsel and was replaced by the appellate defender, following which this appeal was pursued.

ISSUE 1

¶12. Did Roullier file a timely notice of appeal pursuant to Rule 5(b), M.R.App.P.?

¶13. The State contends that Roullier failed to file his notice of appeal in the District Court within the sixty-day time period required by Rule 5(b), M.R.App.P. The State asserts that, although in civil cases Rule 5(a), M.R.App.P., permits a notice of appeal which has been mistakenly filed in the Supreme Court to "be deemed filed in the district court on the date" that it was filed in the Supreme Court, Rule 5(b), M.R. App.P., regarding criminal cases, does not include such a provision. Accordingly, the State contends that timely filing in the Supreme Court is of no significance, and since filing of the notice of appeal in the District Court did not occur until May 21, 1997, sixty-five days after the judgment and sentence was filed, it was untimely. Therefore, the State contends that this Court has no jurisdiction to consider the merits of Roullier's appeal.

¶14. In applying Rule 5(b), M.R.App.P. to the facts before us, we are persuaded by the Ninth Circuit's decision in *Brannan v. United States* (9th Cir. 1993), 993 F.2d 709. The defendant in that case filed a pro se letter of appeal in the court of appeals, as opposed to the district court, as required by Rule 4, Fed.R.App.P. The federal rule is identical to Rule 5, M.R.App.P. The Ninth Circuit construed the letter as a notice of appeal and, furthermore, deemed it filed in the district court on the date that it was received in the court of appeals. It stated:

In contrast to Rule 4(a), Rule 4(b) is silent on whether a court of appeals should transmit a notice of appeal in a criminal matter to the clerk of the district court when the notice has been mistakenly filed in the appellate court. We find that the equities underlying the transfer provision of Rule 4(a) also are present in the context of criminal appeals, especially when the notice of appeal is submitted by a pro se litigant.

*Brannan*, 993 F.2d at 710.

¶15. While influenced in part by *Brannan*, and the State's failure to offer any

contrary authority, we are ultimately convinced by the fact that there is no rational basis for distinguishing between criminal and civil appellants in this procedural regard. Rather, where a criminal defendant has mistakenly filed a notice of appeal in this Court, but has done so within the sixty-day time period established by Rule 5, M. R.App.P., and in all other substantive respects has complied with the Rules, we conclude that he should be given the same opportunity as a civil appellant to have his appeal determined on the merits. Since Roullier's notice of appeal was filed in the Supreme Court within sixty days, we hold that it should be deemed properly filed in the District Court that same day, May 12, 1997. Accordingly, this Court has jurisdiction to consider his appeal.

## ISSUE 2

¶16. Was there sufficient evidence to support the jury's verdict?

¶17. We review the sufficiency of the evidence to support a jury verdict to determine whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *See State v. Licht* (1994), 266 Mont. 123, 131, 879 P.2d 670, 675; *see also State v. Mergenthaler* (1994), 263 Mont. 198, 203, 868 P.2d 560, 562.

¶18. Section 45-5-202(b), MCA, states that "[a] person commits the offense of felony assault if the person purposely or knowingly causes reasonable apprehension of serious bodily injury in another by use of a weapon."

¶19. Roullier contends that the State failed to prove that he actually "used" the snake to cause Stevens apprehension of serious bodily injury. Rather, he contends that the State's evidence only proved that he was in possession of the snake, and that possession alone is insufficient to prove use.

¶20. The record establishes that when the officers entered the apartment, they were confronted by Roullier with the snake in his arms. Roullier continued to hold the snake after repeated orders from the officers to put the snake down. The record also shows that Roullier told the officers that a bite from the snake would be deadly, and that he advanced toward the officers with the snake extended in an effort to persuade them to move out of his way and permit him to leave the apartment. Furthermore, Stevens testified that he feared Roullier was going to attack him with the snake and

that he would be seriously injured by the snake. Despite the failed nature of his attempts to get by the officers, and the fact that the snake did not bite either Roullier or the officers, there was sufficient evidence in the record from which a jury could find that Roullier's manipulation of the snake amounted to much more than mere possession, and that its use knowingly caused Stevens reasonable apprehension of serious bodily injury. Accordingly, we affirm the jury's verdict.

ISSUE 3

¶21. Did the District Court err when it imposed the two-year sentence enhancement pursuant to § 46-18-221(1), MCA?

¶22. Section 46-18-221(1), MCA, states:

A person who has been found guilty of any offense and who, while engaged in the commission of the offense, knowingly displayed, brandished, or otherwise used a . . . dangerous weapon shall, in addition to the punishment provided for the commission of such offense, be sentenced to a term of imprisonment in the state prison of not less than 2 years or more than 10 years.

In *State v. Guillaume*, 1999 MT 29, ¶ 16, 56 St. Rep. 117, ¶ 16, we recently held that application of § 46-18-221, MCA, to "felony convictions where the underlying offense requires proof of use of a weapon violates the double jeopardy provision of Article II, Section 25 of the Montana Constitution."

¶23. In *Guillaume*, the defendant was convicted of felony assault after he threatened and tried to kill someone with a hammer. The district court then imposed a ten-year sentence for the felony assault, and an additional five-year sentence for his use of a weapon pursuant to § 46-18-221, MCA. We held that since the conduct for which Guillaume was convicted would not have been a felony but for his use of a weapon, the further sentence enhancement pursuant to § 46-18-221, MCA, for his use of a weapon constituted multiple punishment and violated the defendant's right pursuant to Article II, Section 25, of the Montana Constitution, to be free from multiple punishments. *See Guillaume*, ¶ 16.

¶24. Our decision in *Guillaume* is applicable to this case. Roullier was found guilty of felony assault and sentenced for that offense based on his use of the snake as a

weapon. Therefore, imposition of an additional two-year sentence pursuant to § 46-18-221, MCA, solely for his use of the snake as a weapon violates Roullier's constitutional protection from double jeopardy.

¶25. The State contends that our decision in *State v. Lafley*, 1998 MT 21, 287 Mont. 276, 954 P.2d 1112, and Roullier's own failure to raise a proper objection to the sentence enhancement at the time of sentencing, preclude him from now raising the matter on appeal. We recently addressed this same issue in *State v. Brown*, 1999 MT 31. Based on our decision in *Guillaume*, we held that a "failure to review Brown's double jeopardy challenge would result in a manifest miscarriage of justice because Brown would be subjected to [an enhanced sentence] in contravention of the law." *See Brown*, ¶ 12. We therefore relied on the plain error doctrine to review and ultimately reverse the defendant's enhanced sentence in spite of his failure to raise a double jeopardy objection at the time that he was sentenced. We do so here for the same reason.

¶26. Accordingly, we affirm Roullier's conviction, but reverse the District Court's enhancement of his sentence pursuant to § 46-18-221, MCA, and remand to the District Court for revision of Roullier's sentence in that limited respect.

/S/ TERRY N. TRIEWEILER

We Concur:

/S/ J. A. TURNAGE

/S/ JAMES C. NELSON

/S/ W. WILLIAM LEAPHART

/S/ WILLIAM E. HUNT, SR.

No

sig