No. 02-459

IN THE SUPREME COURT OF THE STATE OF MONTANA

2004 MT 191

STATE OF MONTANA,

        Plaintiff and Respondent,

   v.

SCOTT S. SMITH,

        Defendant and Appellant.

APPEAL FROM:    District Court of the Thirteenth Judicial District,
In and For the County of Yellowstone, Cause No. DC 2001-523,
Honorable G. Todd Baugh, Presiding Judge

COUNSEL OF RECORD:

       For Appellant:

           Robert L. Stephens, Jr., Southside Law Center, Billings, Montana

       For Respondent:

           Honorable Mike McGrath, Attorney General; Carol E. Schmidt, Assistant
Attorney General, Helena, Montana

           Dennis Paxinos, County Attorney; Melodee Hanes, Deputy County
Attorney, Billings, Montana

                    Submitted on Briefs:   June 5, 2003

                            Decided:   July 26, 2004

Filed:

_____
Clerk

Justice Jim Rice delivered the Opinion of the Court.

¶1 Scott S. Smith (Smith) appeals from the order entered by the Thirteenth Judicial District Court, Yellowstone County, denying his motion to dismiss. We reverse.

¶2 The following issue is presented on appeal:

¶3 Did the District Court err in denying Smith's motion to dismiss Count I of the second amended Information on grounds that: (a) the prosecutor erroneously charged him with the offense of assault with a weapon, pursuant to § 45-5-213, MCA, rather than the offense of privacy in communications through intimidation over the telephone, pursuant to § 45-8-213, MCA; and (b) the affidavit supporting the charge of assault with a weapon pursuant to § 45-5-213, MCA, failed to state the required elements to establish the offense of assault with a weapon?

## FACTUAL AND PROCEDURAL BACKGROUND

¶4 On July 12, 2001, the Yellowstone County Attorney filed an Information charging Smith with two counts of felony assault with a weapon, pursuant to § 45-5-213, MCA. Count I charged Smith with causing Tami Smith (Tami), his wife, reasonable apprehension to believe Smith would inflict serious bodily injury on Mac Hernandez (Hernandez), Tami's boyfriend. Count II charged Smith with causing Hernandez reasonable apprehension to believe Smith would inflict serious bodily injury on Hernandez.

¶5 The affidavit in support of the Information alleged that on or about July 9, 2001, Smith and Tami were estranged husband and wife, and that Tami had begun a relationship with Mac Hernandez, a security officer for Saint Vincent's Hospital. During a telephone

conversation, Smith told Tami he was going to kill Hernandez with a gun. He then made a metallic clicking noise over the telephone. Smith asked, "Do you know what this is?" He told her it was the sound of a gun cocking and that he was going to go kill Hernandez. Smith then hung up. Tami immediately notified Hernandez to warn him. Shortly thereafter, Smith called Hernandez twice on Hernandez's cell phone while Hernandez was at work. In the first call, Smith said he was on his way to kill Hernandez. In the second call, Smith told Hernandez he was in the hospital where Hernandez worked looking for him to kill him. When Hernandez asked Smith to identify his location, he responded, "No, I think we will make this interesting." Hernandez put on a bulletproof vest and immediately contacted the police who later arrested Smith in front of his home. At the time of arrest, police recovered three firearms from Smith's living room. Later, one of Smith's friends gave police two bullets upon one of which Smith had allegedly written the name "Mac" and upon the other a "?".

¶6     The affidavit in support of the Information stated that Smith used the cocking of the gun, or that sound, with Tami, but not with Hernandez, and further indicated that "Mac Hernandez believed that the defendant was on his way to the hospital to shoot him that evening," and that "Tami Smith believed that the defendant would carry out his threat to go to the hospital and shoot Mr. Hernandez."

¶7     On September 25, 2001, Smith filed a motion to dismiss the Information and memorandum in support which asserted: (1) the Information failed to set forth a prima facie allegation of assault with a weapon in violation of § 45-5-213, MCA; (2) since assault with

3

a weapon could not be committed over the telephone, the proper violation with which Smith should have been charged was violation of privacy in communications through intimidation over the telephone, in violation of § 45-8-213(1)(a), MCA; and (3) the alleged victim was required by § 45-5-213, MCA, to "see" the weapon or "reasonably believe that there is a weapon being utilized by the perpetrator to cause 'reasonable apprehension of serious bodily injury,'" which, Smith asserts, Hernandez, as the intended victim, did not do. In response, the State argued that the victim of an assault with a weapon need not actually "see" the weapon for sufficient evidence to exist of reasonable apprehension of serious bodily injury with a weapon.

¶8 On October 24, 2001, the State filed a second amended affidavit which set forth the same facts, but more precisely delineated the alleged victims involved. The State also requested leave to file a second amended Information. On the same day, after hearing oral argument, the District Court denied Smith's motion to dismiss on the following grounds:

> What we have here is purposely or knowingly caused reasonable apprehension. The apprehension has to do with apprehension of serious bodily injury, in another. I think that means in someone other than the defendant, and it has to include use of a weapon. . . . [T]his statute is primarily to–it's designed to punish, to criminalize, the use or threatened use of a weapon, and that's what occurred here. Bottom line is, he threatened to kill and he threatened to kill with a gun. And I think that's the main intent of this statute.

¶9 On November 1, 2001, the State filed a second amended Information, and Smith pled not guilty to both counts of assault with a weapon, subject to the reservation of his objections previously made.

¶10 On April 5, 2002, Smith entered into a plea agreement that required him to plead guilty to Count I of the amended Information which alleged that Smith caused reasonable apprehension in Tami that Smith would kill Hernandez with a weapon. In exchange for Smith's plea of guilty to Count I, the State agreed: (1) to dismiss with prejudice Count II of the second amended Information which alleged that Smith caused reasonable apprehension in Hernandez that Smith would kill Hernandez with a weapon; and (2) to recommend a deferred sentence of two years, providing that Smith follow specified probation conditions. Smith reserved the right to appeal to this Court on issues related to the appropriateness of the charges brought in the second amended Information.

¶11 On June 11, 2002, the District Court entered an order deferring imposition of sentence for a period of two years and placed Smith on probation. Smith appeals.

## STANDARD OF REVIEW

¶12 A district court's denial of a motion to dismiss criminal charges is a matter of law which we review *de novo*, determining only whether the court correctly interpreted the law. *State ex rel. Booth v. Montana Twenty-First Judicial Dist.*, 1998 MT 344, ¶ 10, 292 Mont. 371, ¶ 10, 972 P.2d 325, ¶ 10 (citing *State v. Bowles* (1997), 284 Mont. 490, 492, 947 P.2d 52, 53).

## DISCUSSION

¶13 *Did the District Court err in denying Smith's motion to dismiss the Information on grounds that the prosecutor erroneously charged him with the offense of assault with a weapon rather than the offense of privacy in communications through intimidation over the telephone?*

5

¶14     Smith recounts the facts alleged in the affidavit in support of the second amended

Information:

> [T]he ex-wife was talking on the telephone with the defendant when he became angry and stated he was going to kill the boyfriend. . . . [T]he defendant made a metallic clicking sound over the telephone and then asked, "Do you know what this is?" He continued to tell her it was the sound of a gun cocking and that he was going to kill Mr. Hernandez. The [sic] then hung up.

¶15     Smith asserts that, based upon these facts, the District Court erred in denying his

motion to dismiss the Information on grounds the prosecutor erroneously charged him with

what Smith terms the "generalized" offense of assault with a weapon, pursuant to § 45-5-

213, MCA, rather than the "specific" violation of privacy in communications through

intimidation over the telephone, pursuant to § 45-8-213(1)(a), MCA. Smith argues that the

essence of the difference between these two statutes is that the privacy in communications

statute is a "specific," or "particularized," version of the "general" assault with a weapon

statute.

¶16     Section 45-5-213, MCA, assault with a weapon, states:

> **45-5-213. Assault with a weapon.** (1) A person commits the offense of assault with a weapon if the person purposely or knowingly causes:
>     (a) bodily injury to another with a weapon; or
>     (b) reasonable apprehension of serious bodily injury in another by use of a weapon or what reasonably appears to be a weapon.
>     (2) . . . [A] person convicted of assault with a weapon shall be imprisoned in the state prison for a term not to exceed 20 years or be fined not more than $50,000, or both.

Section 45-8-213, MCA, privacy in communications, states in pertinent part:

6

**45-8-213. Privacy in communications.** (1) . . . [A] person commits the offense of violating privacy in communications if the person knowingly or purposely:

(a) with the purpose to terrify, intimidate, threaten, harass, annoy, or offend, communicates with a person by electronic communication and uses obscene, lewd, or profane language, suggests a lewd or lascivious act, or threatens to inflict injury or physical harm to the person or property of the person. The use of obscene, lewd, or profane language or the making of a threat or lewd or lascivious suggestions is prima facie evidence of an intent to terrify, intimidate, threaten, harass, annoy, or offend.

. . . .

(3) (a) A person convicted of the offense of violating privacy in communications shall be fined not to exceed $500 or imprisoned in the county jail for a term not to exceed 6 months, or both.

¶17 Smith cites *State v. Feight,* 2001 MT 205, 306 Mont. 312, 33 P.3d 623, in support of his contention that the "specific controls over the general." In *Feight*, where a "general-specific" relationship existed among several statutes, the specific statutes controlled over the general. In *Feight*, this Court affirmed a district court's dismissal of an appeal from justice court of a denial of the defendant's motion to withdraw a guilty plea. *Feight*, ¶ 24. The defendant argued that under § 46-20-104, MCA, the "generalized" scope-of-appeal statute, he should have been entitled to appeal any final judgment or order, except as otherwise provided by law. We concluded in that case, however, that § 46-20-104, MCA, was inapposite because §§ 3-5-303, 46-17-203, 46-17-311, and 46-12-204, MCA, were the "specific" code sections which provided for and defined the parameters of the jurisdiction of a district court to entertain appeals from justice court in the first instance. *Feight*, ¶ 20. This Court stated the well-settled rule of statutory construction:

[I]t is a well-settled rule of statutory construction that the specific prevails over the general. A particular statutory intent controls over a general one which is inconsistent with it. Section 1-2-102, MCA. Further, when two

7

statutes deal with a subject, one in general and comprehensive terms, and the other in minute and more definite terms, the more definite statute will prevail to the extent of any opposition between them.

*Feight*, ¶ 21. Thus, the specific rather than the general criminal statutes were applicable in *Feight.*

¶18 Smith asserts that the same "general-specific" relationship at issue among the statutes under review in *Feight* exists between the two statutes under review here. However, the two statutes in this case distinctly punish different criminal conduct, one requiring use of a weapon, and one not. We conclude that nothing in the plain language of these two statutes indicates that either was meant to be a "generalized" or "particularized" version of the other. Thus, Smith's argument that the prosecutor was obligated to charge him with a violation of privacy in communications as a "specific" offense rather than a violation of assault with a weapon as the "general" offense is without merit.

¶19 Further, a county attorney has broad discretion in determining when to prosecute a case and what crime will be charged. In Montana, "[i]t is not only incumbent upon the county attorney to determine when or when not to prosecute a case, but when the facts of a case support a possible charge of more than one crime, the crime to be charged is a matter of prosecutorial discretion." *State ex rel. Fletcher v. District Court* (1993), 260 Mont. 410, 415, 859 P.2d 992, 995 (citing *State v. Booke* (1978), 178 Mont. 225, 230, 583 P.2d 405, 408). We therefore conclude that the prosecutor acted within his broad, discretionary powers in charging Smith with assault with a weapon.

8

¶20 *Did the District Court err in denying Smith's motion to dismiss the Information on grounds that the affidavit supporting the charge of assault with a weapon failed to state the required elements to establish the offense of assault with a weapon?*

¶21 Smith further asserts that the District Court erred in denying Smith's motion to dismiss the Information on grounds that the affidavit supporting the charge of assault with a weapon pursuant to § 45-5-213, MCA, failed to state the required elements to establish the offense of assault with a weapon. Smith argues that the assault with a weapon statute requires the victim (1) to "see" the weapon, or (2) to reasonably believe that there is a weapon being utilized by the perpetrator in order to cause the requisite "reasonable apprehension of serious bodily injury." Smith argues that since his telephone threat did neither, it did not meet the statute's "use of a weapon" language.

¶22 First, we address Smith's contention that a victim must "see" the weapon as an element of assault with a weapon. This Court has not decided any cases interpreting § 45-5-213, MCA, since it was enacted as part of the general revision to the assault statutes in 1999, but the language of § 45-5-213, MCA (1999), is nearly identical to § 45-5-202, MCA (1997), the prior "felony assault" offense,[1] which we have interpreted. As the State correctly notes,

_____

[1]    **45-5-202 [1997].  Aggravated assault–felony assault.** . . . .
        (2)  A person commits the offense of felony assault if the person purposely or knowingly causes:
                (a)  bodily injury to another with a weapon; or
                (b)  reasonable apprehension of serious bodily injury in another by use of a weapon.

        **45-5-213 [1999].  Assault with a weapon.** (1)  A person commits the offense of assault with a weapon if the person purposely or knowingly causes:
                (a)  bodily injury to another with a weapon; or

9

the 1999 revisions in the statute did not affect our holdings in *State v. Misner* (1988), 234 Mont. 215, 763 P.2d 23*,* and *State v. Hagberg* (1996), 277 Mont. 33, 920 P.2d 86**,** wherein we concluded that it was not necessary for the victim of an assault with a weapon to actually "see" the weapon for there to be sufficient evidence of reasonable apprehension of serious bodily injury with a weapon.

¶23     In *Misner*, the defendant and a welfare eligibility technician had confrontations over the defendant's welfare claims on several occasions. *Misner*, 234 Mont. at 217, 763 P.2d at 24. After one such meeting, the welfare office secretary observed the defendant take a rifle from his truck and begin yelling and shaking the gun in the direction of the welfare office. *Misner*, 234 Mont. at 218, 763 P.2d at 24. The secretary who observed this act immediately screamed, "Oh, my God, he's got a gun." *Misner*, 234 Mont. at 218, 763 P.2d at 24. The welfare technician, to whom the defendant's actions were directed, but who was physically located in a back office and did not "see" the weapon, unequivocally testified to his apprehension of serious bodily injury. *Misner*, 234 Mont. at 219, 763 P.2d at 25. This Court upheld the defendant's conviction of felony assault (now assault with a weapon) on grounds that it was not necessary for the technician to have personally observed the gun in order for him to have experienced reasonable apprehension of serious bodily injury as required by the statute. *Misner*, 234 Mont. at 219, 763 P.2d at 26.

---

(b)  reasonable apprehension of serious bodily injury in another by use of a weapon or what reasonably appears to be a weapon.

¶24    Similarly, in *Hagberg*, during a traffic stop of a vehicle, a police officer observed an apparently drunken male passenger leaning over with his arms between his legs as if hiding something at the same time he saw an empty holster on the seat between the driver and passenger. *Hagberg*, 277 Mont. at 37, 920 P.2d at 88. The officer unequivocally testified to his apprehension of serious bodily injury. *Hagberg*, 277 Mont. at 40, 920 P.2d at 90. He stated that he smelled alcohol, the defendant sounded belligerent and had a glazed look on his face, there was an empty holster on the seat of the car, and the defendant looked as though he were holding a gun out of the officer's sight. *Hagberg*, 277 Mont. at 37, 920 P.2d at 88. As in *Misner*, this Court upheld the defendant's conviction of felony assault (now assault with a weapon) on grounds that it was not necessary for the officer to have personally observed the gun in order for him to have experienced reasonable apprehension of serious bodily injury as required by the statute. *Hagberg*, 277 Mont. at 41, 920 P.2d at 90.

¶25    Thus, our case law permits two different applications of the language in § 45-5-213(1)(b), MCA, which makes it a crime to cause "reasonable apprehension of serious bodily injury in another by use of a weapon or what reasonably appears to be a weapon." Under one application, a crime is committed if a person *uses a weapon or what reasonably appears to be a weapon* to cause reasonable apprehension of serious bodily injury in the victim. Under the second application, a crime is also committed if a person simply *causes reasonable apprehension that the victim will sustain serious bodily injury from a weapon*, if it reasonably appears to the victim that a weapon is involved, whether actually seen or not. Cases which have approved the first application include *State v. Roullier*, 1999 MT 37, 293

Mont. 304, 977 P.2d 970; *State v. Matt* (1991), 249 Mont. 136, 814 P.2d 52; and *State v. Crabb* (1988), 232 Mont. 170, 756 P.2d 1120. Our holdings in *Misner* and *Hagberg,* however, generally stand for the proposition that the statute is also satisfied under the second application, specifically, merely by the existence of circumstances which lead the victim to reasonably apprehend that he or she will be injured by a weapon. *See Misner*, 234 Mont. at 219, 763 P.2d at 26; *Hagberg*, 277 Mont. at 41, 920 P.2d at 90.

¶26    Given the existence of the second application of subpart (1)(b) of § 45-5-213, MCA, extant under current Montana criminal law, it is necessary to clarify our holding in *State v. Brown* (1989), 239 Mont. 453, 781 P.2d 281. On appeal, the defendant in *Brown* asserted that the evidence at trial was insufficient to sustain a conviction for felony assault, and at most could sustain a conviction for domestic abuse. We stated in *Brown* that the distinction between felony assault (now assault with a weapon) and domestic abuse was that felony assault required use of a weapon:

> Thus, in cases where bodily injury is inflicted to a family or household member, the distinction between felony assault and domestic abuse is that felony assault requires use of a weapon. In cases involving reasonable apprehension of bodily injury in a family or household member, felony assault, in comparison to domestic abuse, requires two additional elements: use of a weapon and that the bodily injury apprehended is of a serious nature. Sections 45-5-206, 45-5-202, MCA.

*Brown*, 239 Mont. at 456, 781 P.2d at 283-84. In light of *Misner* and *Hagberg*, it is not technically correct that "use of a weapon" (or, presumably, what appears to the victim to be a weapon) is a requisite element of the offense. The crime of assault with a weapon may be established: (1) if a person uses a weapon, or what reasonably appears to be a weapon, to

12

cause reasonable apprehension of serious bodily injury in the victim, or (2) if a person causes reasonable apprehension that the victim will sustain serious bodily injury from a weapon, if it reasonably appears to the victim that a weapon is involved, whether actually seen or not.

¶27 We next address Smith's contention that the affidavit supporting the second amended Information failed to state the required elements to establish the offense of assault with a weapon. It is important at the outset to clarify the exact counts of assault with a weapon with which Smith was charged in the second amended Information, and which count was retained pursuant to the April 5, 2002, plea agreement. Count I in the second amended Information stated as follows:

> [T]he Defendant, SCOTT STEPHEN SMITH . . . did knowingly or purposely cause reasonable apprehension of serious bodily injury in another by use of a weapon, to wit; Defendant told Tami Smith he was going to shoot and kill Mac Hernandez under circumstances that caused her reasonable apprehension to believe he would inflict serious bodily injury on Mac Hernandez . . . .

Count II in the second amended Information stated:

> [T]he Defendant, SCOTT STEPHEN SMITH . . . did knowingly or purposely cause reasonable apprehension of serious bodily injury in another by use of a weapon, to wit; Defendant told Mac Hernandez he was going to shoot and kill Mac Hernandez under circumstances that caused him reasonable apprehension to believe he would inflict serious bodily injury on him . . . .

Thus, Count I alleged that Smith caused *Tami* reasonable apprehension that Smith would kill Hernandez, whereas Count II alleged that Smith caused *Hernandez* reasonable apprehension that Smith would kill Hernandez. Pursuant to the plea agreement, Smith pled guilty to Count I in exchange, *inter alia*, for dismissal of Count II. Smith reserved his right to appeal the

13

appropriateness of the charges brought under Count I of the second amended Information which charged him with assault with a weapon under circumstances where, in a telephone call to his ex-wife, he threatened to shoot Mac Hernandez, her boyfriend. The essential question, therefore, is: did Count I of the second amended Information, which was retained by the plea agreement, state the necessary elements to charge Smith with the offense of assault with a weapon pursuant to § 45-5-213, MCA?

¶28    The statute provides as follows:

> **45-5-213. Assault with a weapon.** (1) A person commits the offense of assault with a weapon if the person purposely or knowingly causes:
> (a) bodily injury to *another* with a weapon; or
> (b) reasonable apprehension of serious bodily injury in *another* by use of a weapon or what reasonably appears to be a weapon.

Section 45-5-213, MCA (emphasis added).    Smith argues that the word "another" means *the intended victim*, and that the "reasonable apprehension" in subpart (1)(b) references the apprehension which is experienced *by the intended victim of the serious bodily injury*.  Smith argues that the phrase "in another" in subpart (1)(b) does not mean *a third party victim* who only suffers apprehension of the harm to the intended victim of the serious bodily injury. We agree.

¶29    Although we note that § 45-2-101(3), MCA, defines "another" as "a person or persons other than the offender," and that the District Court concluded that "another" meant "someone other than the defendant," a fair reading of the phrase "in another" within the context of the entire statute, and particularly within the phrase "reasonable apprehension of serious bodily injury in another," means *the intended victim of the serious bodily injury*, not

14

a third party who was merely fearful that the intended victim would be harmed. We conclude that subpart (1)(b) does not expand the crime of assault with a weapon to an entire new group of third parties who were fearful about the defendant inflicting serious bodily injury upon an intended victim. Subpart (1)(b) cannot reasonably be interpreted to define a crime involving two differently postured victims, one who was the object of the serious bodily injury, and another who only sustained apprehension of the harm to the first victim.

¶30 Therefore, to convict Smith of the offense of assault with a weapon, the Information needed to allege that Smith purposely or knowingly caused reasonable apprehension of serious bodily injury *in Hernandez*, *the intended victim of serious bodily injury*, by use of a weapon, or what reasonably appeared to be a weapon; or, by causing reasonable apprehension *in Hernandez, the intended victim of serious bodily injury,* that Hernandez would be injured by a weapon. Thus, although the charge alleged in Count II of the second amended Information was proper under the statute, that charge was dropped pursuant to the plea agreement. Only Count I of the second amended Information was retained, which alleged reasonable apprehension *in Tami*, who was *not* the intended victim of serious bodily injury, but a *third party victim* who was fearful of the harm to the intended victim, Hernandez. Thus, Count I retained by the plea agreement failed to state the necessary elements for the offense of assault with a weapon as required under § 45-5-213, MCA.

¶31 We therefore conclude that the District Court erred in denying Smith's motion to dismiss Count I of the Information.

15

¶32    Reversed.


                                        /S/ JIM RICE



We concur:

/S/ KARLA M. GRAY
/S/ JOHN WARNER
/S/ PATRICIA O. COTTER
/S/ W. WILLIAM LEAPHART
/S/ JIM REGNIER

Justice James C. Nelson dissents.

¶33 I dissent from the Court's interpretation of the term "another" in § 45-5-213(1)(b), MCA, to mean the intended victim of the serious bodily injury.

¶34 Section 45-2-101, MCA, defines "another" as, simply, "a person or persons other than the offender." Interpreting the statute as the majority does violates the statutory responsibility imposed on this Court by § 1-2-101, MCA:

> In the construction of a statute, the office of the judge is simply to ascertain and declare what is in terms or in substance contained therein, not to insert what has been omitted or to omit what has been inserted.

In doing otherwise, the Court intrudes into and directly contravenes the Legislature's constitutional authority, for the duty of this Court in interpreting a statute is to construe the law as we find it--"not to enact, but to expound, the law." *In re Marriage of Skillen*, 1998 MT 43, ¶ 105, 287 Mont. 399, ¶ 105, 956 P.2d 1, ¶ 105 (Nelson, J., concurring and dissenting) (citing *State ex rel. Durland v. Board of County Comm'rs* (1937), 104 Mont. 21, 24, 64 P.2d 1060, 1062; *Clark v. Olson* (1934), 96 Mont. 417, 432, 31 P.2d 283, 288; *Montana Beer Retailers' Protective Ass'n v. State Bd. of Equalization* (1933), 95 Mont. 30, 34, 25 P.2d 128, 130).

¶35 The language inserted by the majority may be appropriate from a policy standpoint and to more clearly define the term "another" as used by the Legislature. The point is, the State relied on the language used by the Legislature and if the Legislature wants to limit the scope of the statute, it is free to do so.

17

¶36 By interpreting § 45-5-213(1)(b), MCA, to refer only to the intended victim of the serious bodily injury, the majority is arbitrarily inserting language into the statute that the Legislature saw fit to omit. Thus, I respectfully dissent.


/S/ JAMES C. NELSON