DA 06-0020

IN THE SUPREME COURT OF THE STATE OF MONTANA

2007 MT 126

STATE OF MONTANA,

        Plaintiff and Respondent,

    v.

BRYAN LEE SWANN,

        Defendant and Appellant.

APPEAL FROM:    District Court of the Thirteenth Judicial District,
In and For the County of Yellowstone, Cause No. DC 04-456
Honorable Ingrid G. Gustafson, Presiding Judge

COUNSEL OF RECORD:

        For Appellant:

                Jim Wheelis, Chief Appellate Defender; Joslyn M. Hunt;
Assistant Appellate Defender, Helena, Montana

        For Respondent:

                Honorable Mike McGrath, Attorney General; Micheal S. Wellenstein,
Assistant Attorney General, Helena, Montana

                Dennis Paxinos, County Attorney, Billings, Montana

Submitted on Briefs:  April 25, 2007

Decided:  May 31, 2007

Filed:

_____
Clerk

Justice W. William Leaphart delivered the Opinion of the Court.

¶1     Defendant Bryan Swann appeals two of the three counts of assault with a weapon for which he was convicted.  We affirm.

¶2     We restate the issues as follows:

¶3     I.  Did the District Court err in denying Swann's motion for a directed verdict?

¶4     II. Did the District Court properly instruct the jury concerning the offense of assault with a weapon?

## BACKGROUND

¶5     On the evening of April 22, 2004, Swann came home drunk.  Swann's wife, Jennifer, tried to hide his keys to prevent Swann from driving.  Swann thought that Jennifer was trying to leave.  He became angry with her and hit her on the cheek with the back of his hand, knocking her off the couch.  Swann then walked toward the room of their daughter, who was two years old at the time, with his 9 mm pistol.  Swann held the gun to Jennifer's cheek and told her that he was going to shoot their daughter, then Jennifer, then himself.

¶6     Jennifer went to work the next morning at the Naval Reserve Center.  She was a relatively new employ at the Center, and did not tell anyone what had happened the night before because she was embarrassed and scared.

¶7     On April 28, 2004, Jennifer told her Navy supervisor, Command Chief Richard Espinoza, that Swann had assaulted her and threatened her and her daughter with his gun. Jennifer informed Espinoza that Swann went everywhere with his gun.   Pursuant to

2

Navy policy, Espinoza told his commanding officer, Mark Ripkey, what had happened to Jennifer.

¶8 The next morning, April 29, Espinoza met with Jennifer and ordered her to call Navy One Source, the Navy's employee assistance program. Jennifer informed Espinoza that Swann thought she and Espinoza were having an affair. Espinoza considered the accusation baseless, as he had been married for twenty-five years and had four children. While in the meeting, Jennifer received a call from Swann. Upon finding out that she was alone in the room with Espinoza, Swann told Jennifer that he was going to come down to the Center and "put a bullet" in Espinoza and her. Jennifer believed Swann had his gun with him that morning as "he always had it on him."

¶9 Jennifer, after hanging up the phone, relayed Swann's threat to Espinoza, whose "eyes got really big." Espinoza ordered the perimeter secured, the doors locked, and posted a watch. He and Jennifer then went to Commander Ripkey's office. Ripkey called 911, and soon thereafter two police officers arrived. While the officers were at the Center, Swann again called Jennifer and told her that he was coming down to kill her and Espinoza. Jennifer relayed Swann's threat to the police officers and her coworkers. Swann had also left several angry, profane messages for Jennifer.

¶10 The police left the Center and intercepted Swann as he was driving. The officer asked Swann if he had a weapon, and he admitted he did. The officer found Swann's 9 mm pistol tucked between the right seat and the console. The officer found the magazine to the gun, containing eight bullets, under the right seat.

3

¶11 Swann was charged with three counts of assault with a weapon. The first count relates to Swann's assault of Jennifer in their home. The second and third counts relate to Swann's two phone calls to Jennifer where he threatened to shoot her and Espinoza. During trial, Swann motioned for a directed verdict, arguing that there was no evidence that Swann referred to having a gun during his two phone calls with Jennifer. The District Court concluded that sufficient evidence existed to submit the counts to the jury, and denied the motion.

¶12 Swann also objected to two jury instructions describing the offense of assault with a weapon. The first instruction read:

> A person commits the offense of assault with [a] weapon if the person purposely or knowingly causes reasonable apprehension of serious bodily injury in another by use of a weapon or what reasonably appeared to Jennifer Swann to be a weapon. This may be established if it reasonably appeared to Jennifer Swann that a weapon is involved, whether actually seen or not.

The second instruction was formulated in the same manner, but referenced Espinoza instead of Jennifer.

¶13 Ultimately, the jury convicted Swann of all three counts of assault with a weapon. Swann appeals his conviction for the second and third counts concerning the threatening phone calls.

## DISCUSSION

¶14 **I. Did the District Court err in denying Swann's motion for a directed verdict?**

¶15 A. <u>Standard of Review</u>

¶16 Our established standard of review for denial of a motion for a directed verdict of acquittal is to determine whether the district court abused its discretion. *State v. Ray*, 2003 MT 171, ¶ 34, 316 Mont. 354, ¶ 34, 71 P.3d 1247, ¶ 34 (citing *State v. Giant*, 2001 MT 245, ¶ 9, 307 Mont. 74, ¶ 9, 37 P.3d 49, ¶ 9). A directed verdict is only appropriate if, viewing the evidence in a light most favorable to the prosecution, there is no evidence upon which a rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Ray*, ¶ 34 (citing *Giant*, ¶ 9). However, we have also recognized that if the denial of directed verdict is based on a conclusion of law, such as the interpretation of a statute, we review the denial *de novo* to determine whether it is correct. *Ray*, ¶ 34 (citing *Giant*, ¶ 9).

¶17 Here, the District Court's denial of Swann's motion for directed verdict rests on the court's interpretation of what constitutes reasonable apprehension of serious bodily injury from a weapon pursuant to § 45-5-213(1)(b), MCA. We recognize that the court had to apply the statute to the facts of this case to make its determination. Nonetheless, mixed questions of law and fact are also reviewed *de novo*. *See State v. Grixti*, 2005 MT 296, ¶ 15, 329 Mont. 330, ¶ 15, 124 P.3d 177, ¶ 15. Further, in considering what standard of review to apply in this case, we recognize that *all* denials of a directed verdict involve application of the law (i.e. the applicable statute) to the facts of the case. Hence, for all denials of motions for directed verdict, the proper standard of review is not abuse of discretion, but *de novo*.

¶18 The abuse of discretion standard arose from this Court's interpretation of the directed verdict statute, § 46-16-403, MCA, which reads:

5

When, at the close of the prosecution's evidence or at the close of all the evidence, the evidence is insufficient to support a finding or verdict of guilty, the court may, on its own motion or on the motion of the defendant, dismiss the action and discharge the defendant.

Our prior case law incorrectly assumed that the use of "may" left the determination of whether there was sufficient evidence to send the matter to the jury "within the sound discretion of the trial court." *See State v. Just*, 184 Mont. 262, 277, 602 P.2d 957, 965 (1979) (citing *State v. Buckley*, 171 Mont. 238, 243, 557 P.2d 283, 285-86 (1976)). "May," however, does not necessarily impart discretion when used in a statute. When the word "may" is used to confer power upon the court, and the public has an interest in the exercise of power, "then the exercise of the power becomes imperative." *State v. Peplow*, 2001 MT 253, ¶ 41, 307 Mont. 172, ¶ 41, 36 P.3d 922, ¶ 41 (quoting *Lamb v. Missoula Imports, Inc.*, 230 Mont. 183, 188, 748 P.2d 965, 968 (1988)).

¶19     A District Court's conclusion as to whether sufficient evidence exists to convict is ultimately an analysis and application of the law to the facts, and as such is properly reviewed *de novo*. There either is, or is not, sufficient evidence to convict, and the determination is not a matter of discretion. Consequently, we now hold that the proper standard of review for denial of a motion for a directed verdict is *de novo*. We overrule our prior cases to the extent they stand for a different standard of review.

¶20     B. Discussion

¶21     Swann argues that the court should have granted a directed verdict for Counts II and III because Swann did not tell Jennifer that he had a gun and did not make any noise with his gun over the phone. Swann contends that, because no evidence was presented

6

that either Jennifer or Espinoza actually perceived that Swann had a gun, no rational trier of fact could have found that Swann caused reasonable apprehension of serious bodily injury "by use of a weapon."

¶22 A person commits the offense of assault with a weapon when he purposely or knowingly causes "reasonable apprehension of serious bodily injury in another by use of a weapon or what reasonably appears to be a weapon." Section 45-5-213(1)(b), MCA. In *State v. Smith*, we concluded that there are two different applications of the language contained in § 45-5-213(1)(b), MCA. 2004 MT 191, ¶ 25, 322 Mont. 206, ¶ 25, 95 P.3d 137, ¶ 25. The crime of assault with a weapon may be established: (1) if a person uses a weapon, or what reasonably appears to be a weapon, to cause reasonable apprehension of serious bodily injury; or (2) if a person causes reasonable apprehension of serious bodily injury from a weapon, "if it reasonably appears to the victim that a weapon is involved, *whether actually seen or not.*" *Smith*, ¶ 25 (emphasis added).

¶23 In *Smith*, the defendant argued that he could not be charged with assault with a weapon because the victim did not "see" the weapon, as the threat was issued over the telephone. *Smith*, ¶ 21. Smith had called his estranged wife, Tami, and told her he was going to kill her boyfriend with a gun. *Smith*, ¶ 5. Smith made a metallic clicking noise over the phone, and asked Tami "[d]o you know what this is?" *Smith*, ¶ 5. He advised her that it was the sound of a gun cocking and that he was going to kill her boyfriend. Tami immediately called the boyfriend to warn him. Shortly thereafter, Smith placed two calls to the boyfriend, threatening to kill him. *Smith*, ¶ 5. In concluding that there was sufficient information to charge Smith with assault with a weapon as against the

7

boyfriend, we stated that § 45-5-213(1)(b), MCA, is satisfied "merely by the existence of circumstances which lead the victim to reasonably apprehend that he or she will be injured by a weapon." *Smith*, ¶ 25 (citations omitted).

¶24 In determining that a victim does not need to actually "see" the weapon in order to experience reasonable apprehension, we considered two previous decisions involving felony assault (now assault with a weapon). In *State v. Misner*, the victim, a welfare technician, did not see the gun, but instead learned of it when a secretary at the welfare office screamed, "Oh, my God, he's got a gun." 234 Mont. 215, 218, 763 P.2d 23, 24 (1988). We upheld the defendant's conviction for felony assault on grounds that it was not necessary for the technician to have personally observed the gun in order for him to have experienced reasonable apprehension of serious bodily injury as required by the statute. *Misner,* 234 Mont. at 219, 763 P.2d at 26.

¶25 Similarly, in *State v. Hagberg*, during a traffic stop of a vehicle, a police officer observed an empty holster on the seat between the driver and an apparently drunken male passenger who was leaning over with his arms between his legs as if hiding something. 277 Mont. 33, 37, 920 P.2d 86, 88 (1996). As in *Misner,* we upheld the defendant's conviction for felony assault since it was not necessary for the officer to have personally observed the gun in order for him to have experienced reasonable apprehension of serious bodily injury as required by the statute. *Hagberg,* 277 Mont. at 41, 920 P.2d at 90.

¶26 Swann asserts that these cases establish that there can be no reasonable apprehension of serious bodily injury unless the victim directly perceives the weapon by one of the five senses. According to Swann, the court should have granted Swann's

8

motion for a directed verdict because neither Jennifer nor Espinoza directly perceived Swann's gun.

¶27 We disagree. The requirements of § 45-5-213(1)(b), MCA, are satisfied merely by the existence of circumstances which lead the victim to reasonably apprehend that he or she will be injured by a weapon. *Smith*, ¶ 25 (citations omitted). Direct perception is not necessary. Here, as in *Misner*, Jennifer reasonably believed that Swann had a gun, given his threat that he was going to "put a bullet" in her and Espinoza. Jennifer knew that Swann always carried his gun and he had held that gun to her cheek and threatened to shoot her only days before. Sufficient evidence existed, therefore, for a jury to determine that it reasonably appeared to Jennifer that a weapon was involved. *See Smith*, ¶ 25.

¶28 Although Espinoza was not directly threatened by Swann, Jennifer told him that Swann had threatened to shoot him as well. Similarly, the boyfriend in *Smith* learned through Tami that Smith had threatened him. *Smith*, ¶ 5. Espinoza was meeting with Jennifer when she received the threatening call and she immediately relayed Swann's threat to him. In response, Espinoza ordered the perimeter secured. Furthermore, Jennifer had told Espinoza that Swann went everywhere with his gun and Espinoza was aware that Swann had previously assaulted Jennifer with his gun. Sufficient evidence existed, therefore, for a jury to determine that it reasonably appeared to Espinoza that a weapon was involved. *See Smith*, ¶ 25.

¶29 Based on these circumstances, the District Court was correct to deny Swann's motion for a directed verdict.

¶30    **II.  Did the District Court properly instruct the jury concerning the offense of assault with a weapon?**

¶31    A.  Standard of Review

¶32    We review jury instructions in a criminal case to determine whether the instructions, as a whole, fully and fairly instruct the jury on the law applicable to the case. Further, we recognize that a district court has broad discretion when it instructs a jury, and we therefore review a district court's decision regarding jury instructions to determine whether the court abused that discretion.  *State v. German*, 2001 MT 156, ¶ 10, 306 Mont. 92, ¶ 10, 30 P.3d 360, ¶ 10.

¶33    B.  Discussion

¶34    Swann contends that the court impermissibly broadened the definition of assault with a weapon when it added the language "whether actually seen or not" to the jury instruction.   Swann also contends that the instruction confused the issue of whether Swann actually caused apprehension by use of a weapon because it was undisputed that Jennifer and Espinoza did not see the gun.   The court's instruction thus "effectively decided for [the jury] Counts II and III."

¶35    Here, the additional language added by the court was pulled directly from the *Smith* opinion, and accurately reflected the conclusion in that case.  Moreover, it is likely that the jury would have become confused without such an instruction.  We conclude that the District Court did not abuse its discretion in instructing the jury because the instructions, as a whole, fully and fairly instruct the jury on the law applicable to the case. *German*, ¶ 10.

## CONCLUSION

¶36     We uphold the District Court's denial of Swann's motion for a directed verdict

and conclude that the court did not err in instructing the jury.  Affirmed.


/S/ W. WILLIAM LEAPHART


We concur:

/S/ KARLA M. GRAY
/S/ PATRICIA COTTER
/S/ JIM RICE
/S/ BRIAN MORRIS