DA 06-0258

# IN THE SUPREME COURT OF THE STATE OF MONTANA

## 2008 MT 91

STATE OF MONTANA,

        Plaintiff and Appellee,

  v.

LARRY BOMAR,

        Defendant and Appellant.

APPEAL FROM:    District Court of the Ninth Judicial District,
In and For the County of Glacier, Cause No. DC 05-11
Honorable Marc G. Buyske, Presiding Judge

COUNSEL OF RECORD:

        For Appellant:

        William F. Hooks, Attorney at Law, Helena, Montana

        For Appellee:

        Hon. Mike McGrath, Montana Attorney General; John Paulson,
Assistant Attorney General, Helena, Montana

        Larry D. Epstein, Glacier County Attorney; Thane P. Johnson,
Deputy County Attorney

                Submitted on Briefs:  May 23, 2007

                Decided:  March 18, 2008

Filed:

_____
                Clerk

Chief Justice Karla M. Gray delivered the Opinion of the Court.

¶1     Larry Bomar appeals from the judgment entered by the Ninth Judicial District Court, Glacier County, upon a jury verdict convicting him of the felony offense of sexual assault, and from its subsequent order denying his motion for a new trial.  We affirm.

¶2     The restated issues on appeal are:

¶3     1.  Did the District Court err in denying Bomar's motions for dismissal and a new trial based on insufficiency of the evidence?

¶4     2.  Did the District Court err in admitting expert testimony regarding the validity of the statements by a child witness contained in a law enforcement officer's report?

## BACKGROUND

¶5     In 2005, the State of Montana charged Bomar by amended information with the felony offense of attempted sexual intercourse without consent and, alternatively, with the felony offense of sexual assault.  The offense allegedly occurred in July of 2000 and involved then-six-year-old K.J.

¶6     Before trial, Bomar filed several motions *in limine* which focused in part on the anticipated expert testimony of marriage and family therapist Rochelle Beley regarding her assessment (statement validity assessment) of K.J.'s statements contained in an Oregon law enforcement officer's report.  The District Court granted Bomar's motion to preclude testimony regarding the ultimate issue of whether Bomar sexually assaulted K.J., and reserved ruling on other aspects of anticipated expert testimony.

¶7     During the trial in 2005, the State called then-12-year-old K.J. to testify.  Among

other things, K.J. testified that in 2000, Bomar had placed his penis in her "bottom"—which she and other witnesses clarified in other testimony was K.J.'s term for her vagina or vaginal area—and touched her naked "bottom" with his naked penis. Additional witnesses for the State testified about the circumstances surrounding the alleged incident and K.J.'s reports of it.

¶8 The State asserted K.J.'s credibility had been attacked, and called Beley as its final witness. Bomar objected. After hearing Beley's *in camera* testimony regarding her statement validity assessment, the District Court allowed Beley's trial testimony and afforded the defense a continuing objection. Among other things, Beley testified that, based on her statement validity assessment, "it appeared many of [K.J.'s] statements [in the Oregon officer's report] were consistent with the research, which shows valid statements of sexual abuse."

¶9 After the State rested its case, Bomar moved for dismissal. The District Court denied the motion, stating the evidence was sufficient to submit the case to the jury.

¶10 During Bomar's case-in-chief, the defense presented witnesses to refute certain factual aspects of the State's case and to support Bomar's affirmative defense of mistaken identity. In addition, the defense called licensed psychologist Dr. Donna Zook, and the State objected. The District Court heard arguments *in camera* regarding Zook's anticipated testimony and made rulings. Zook then testified that Beley had not followed proper procedures in performing the statement validity assessment, including a requirement to conduct a face-to-face interview with the child. After the settling of jury instructions, Bomar renewed his motion to dismiss, characterizing it as a motion for

judgment of acquittal. The District Court denied the motion.

¶11 The jury found Bomar guilty of sexual assault. Bomar moved for a new trial on multiple grounds, and submitted clinical psychologist Dr. Michael Scolatti's affidavit setting forth Scolatti's opinions regarding Beley's statement validity assessment. The District Court denied the motion for a new trial, and entered judgment and sentence.

¶12 Bomar appeals, represented by new counsel.

## STANDARDS OF REVIEW

¶13 In a criminal case, a motion for dismissal for insufficiency of the evidence under § 46-16-403, MCA, is only appropriate if, viewing the evidence in a light most favorable to the prosecution, no evidence exists upon which a rational trier of fact could find the essential elements of the crime beyond a reasonable doubt. *See State v. Swann*, 2007 MT 126, ¶ 16, 337 Mont. 326, ¶ 16, 160 P.3d 511, ¶ 16 (citations omitted). We review a district court's denial of such a motion *de novo*, because evidence is either sufficient or it is not. *Swann*, ¶¶ 16-19.

¶14 We generally review evidentiary rulings for an abuse of discretion. *See e.g. State v. Mizenko*, 2006 MT 11, ¶ 8, 330 Mont. 299, ¶ 8, 127 P.3d 458, ¶ 8 (citation omitted). However, to the extent an evidentiary ruling is based on a conclusion of law—as Bomar primarily asserts here with regard to the admission of Beley's testimony—our review is plenary. *See State v. Skinner*, 2007 MT 175, ¶ 15, 338 Mont. 197, ¶ 15, 163 P.3d 399, ¶ 15 (citation omitted).

¶15 Our standard of review of a trial court's ruling on a motion for a new trial depends on the basis of the motion. *State v. Ariegwe*, 2007 MT 204, ¶ 164, 338 Mont. 442, ¶ 164,

4

167 P.3d 815, ¶ 164 (citation omitted).  In general, we review the denial of a motion for a new trial for abuse of discretion, while acknowledging the underlying assertion may involve a different standard of review.  *See e.g. State v. Vaughn*, 2007 MT 164, ¶ 28, 338 Mont. 97, ¶ 28, 164 P.3d 873, ¶ 28 (citations omitted).  When a motion for a new trial is based on an asserted insufficiency of the evidence, however, our review is *de novo*.  *See Ariegwe*, ¶ 164 (citation omitted).

## DISCUSSION

¶16   *1. Did the District Court err in denying Bomar's motions for dismissal and a new trial based on insufficiency of the evidence?*

¶17   A person who knowingly subjects another person to any sexual contact without consent commits the offense of sexual assault.  Section 45-5-502(1), MCA (1999).  As pertinent to this case, "sexual contact" means touching of the sexual or other intimate parts of another person, directly or through clothing, in order to knowingly or purposely arouse or gratify the sexual response or desire of either party.  Section 45-2-101(66), MCA (1999).  A person who knowingly has sexual intercourse without consent with another person commits the offense of sexual intercourse without consent.  Section 45-5-503(1), MCA (1999).  "Sexual intercourse" means, in pertinent part, penetration of the vulva of one person by the penis of another person.  *See* § 45-2-101(67), MCA (1999).

¶18   The District Court instructed the jury in accordance with the foregoing statutes, and also gave an instruction on "attempt," mentioned below.  In addition, the District Court instructed that sexual assault and attempted sexual intercourse without consent were charged in the alternative, and the jury could not convict Bomar of both offenses.

5

As noted above, the jury found Bomar guilty of sexual assault.

¶19 Bomar posits that the only evidence of the "sexual contact" element of sexual assault was K.J.'s testimony that Bomar put his penis in her "bottom." In this respect, Bomar observes the State originally charged him with sexual intercourse without consent and later amended the charge to attempted sexual intercourse without consent. He asserts the amended charge indicates the State believed the evidence was insufficient to establish penetration. Whether Bomar intends this assertion regarding the State's charging procedure to be free-standing or merely part of his overarching assertion regarding insufficiency of the evidence, he advances no authority or developed argument supporting his apparent position that the amendment of a charging document has some substantive effect on the sufficiency of the evidence presented at trial. It is not this Court's obligation to develop arguments on a party's behalf. *See State v. Lewis*, 2007 MT 295, ¶ 44, 340 Mont. 10, ¶ 44, 171 P.3d 731, ¶ 44 (citations omitted). Accordingly, we decline to address this assertion further.

¶20 Bomar also argues, apparently in relation to the denial of his motion for a new trial, that his acquittal on the attempted sexual intercourse without consent charge indicates the jury disbelieved K.J.'s testimony regarding penetration, or found the State did not prove that he performed an "act that [went] far enough toward accomplishing Sexual Intercourse to amount to beginning to commit the offense of Sexual Intercourse Without Consent," as contemplated in the "attempt" instruction. Generally, consistency in jury verdicts is not required and, thus, the question is not whether a criminal jury's verdict is inconsistent, but whether the verdict is supported by sufficient evidence. *See*

6

*State v. Hicks*, 2006 MT 71, ¶ 15, 331 Mont. 471, ¶ 15, 133 P.3d 206, ¶ 15 (citations omitted). Bomar maintains, however, that this case presents a situation in which his acquittal on the attempted sexual intercourse without consent charge demonstrates the insufficiency of the evidence to support his sexual assault conviction. We disagree.

¶21 K.J. testified to the following on direct examination. When she was six years old, she camped with her grandparents in the vicinity of Cut Bank, Montana. Bomar had a house at the campground, and K.J. met and played with Bomar's grandson. The day before K.J.'s seventh birthday, Bomar's spouse was outside, Bomar was sitting in his chair, his grandson was sitting on a couch approximately two to three feet away and K.J. was standing next to Bomar's chair. K.J. asked if she could get a drink or use the restroom, and Bomar answered "[y]es, but can you come here real quick?" K.J. stood between Bomar's legs, which were spread apart. Bomar asked K.J. to move her swimsuit bottom, and she moved it aside so that her "bottom," or vaginal area, was visible. Bomar unzipped his pants, moved his underwear aside, pulled out his penis, and "put it in [her] bottom." Bomar held his penis with one hand and placed his other hand on K.J.'s back between her shoulder blades. His penis grew bigger "[l]ike a brain popping" and K.J. felt wetness in her "bottom." Bomar zipped his pants, and K.J. went to the restroom.

¶22 On cross-examination, K.J. responded affirmatively when asked if what happened to her went inside her "privates" and if she felt it. She further stated she had felt a little wet afterward, and did not remember telling a detective she felt neither wet nor messy. In addition, K.J. admitted there was no blood, bruising or pain, and she did not yell, scream, cry out or call for help. She also acknowledged that, before trial, she had—apparently

7

contrary to Bomar's physical appearance and some of her testimony on direct examination—described Bomar as wearing sweat pants, having a tattoo on his arm and having a moustache. On redirect, she testified her "bottom" was naked, Bomar's penis was naked, and he touched her with it.

¶23 Credibility determinations are within the province of the trier of fact—here, the jury—and we will not disturb such determinations on appeal. *See State v. Pittman*, 2005 MT 70, ¶ 42, 326 Mont. 324, ¶ 42, 109 P.3d 237, ¶ 42 (citation omitted). Further, a jury is at liberty to believe all, part or none of the testimony of a witness. *State v. Ferguson*, 2005 MT 343, ¶ 94, 330 Mont. 103, ¶ 94, 126 P.3d 463, ¶ 94 (citations omitted).

¶24 In *State v. York*, 2003 MT 349, ¶ 13, 318 Mont. 511, ¶ 13, 81 P.3d 1277, ¶ 13, we assumed *arguendo* that, due to the times and distances involved, it was impossible for the appellant to commit an assault as certain witnesses had testified and then encounter a law enforcement officer at another location. We deemed unpersuasive, however, his assertion that the jury was required to accept or reject the entirety of the witnesses' testimony. *York*, ¶ 14. Instead, we determined that, in light of a jury instruction, it was plausible that the jury rejected parts of the witnesses' version of events and, in its discretion, accepted the remainder. Noting we could not know precisely why or how the jury reached its decision, we held sufficient evidence supported the conviction. *York*, ¶¶ 14-15.

¶25 Following our *York* approach, we assume *arguendo* that Bomar's acquittal on the attempted sexual intercourse without consent charge indicates the jury found the evidence did not establish an act amounting to the beginning of penetration. We also note the District Court instructed that "[a]t the outset, a witness is entitled to a presumption that

his or her testimony is truthful[,]" and "[a] witness false in one part of his or her testimony is to be distrusted in others. However, this rule does not apply to a witness who unintentionally commits an error." As set forth above, K.J. testified on redirect that Bomar touched her "bottom," or vaginal area, with his penis; she did not use a term indicating penetration, such as "in" or "inside" on redirect. In light of the jury instructions, we conclude it is plausible that the jury determined K.J. had unintentionally erred in her testimony regarding penetration, yet applied the presumption of truthfulness to her testimony regarding "sexual contact" with her intimate parts without penetration. *See* § 45-2-101(66), MCA (1999). Further, viewing the evidence in the light most favorable to the prosecution, we conclude K.J.'s testimony was sufficient for a rational trier of fact to find the State had established the elements of sexual assault beyond a reasonable doubt. *See Swann*, ¶ 16; § 45-5-502(1), MCA (1999). As a result, we need not address Bomar's argument that the District Court erroneously denied his motion for a new trial based on cases addressing alleged inconsistencies of verdicts with respect to separate, rather than alternative, charges.

¶26 Bomar also asserts that touching his penis to K.J.'s vaginal area would have constituted attempt—as defined in the "attempt" jury instruction—to commit sexual intercourse without consent, the charge of which he was acquitted. While not entirely clear, it appears his assertion is that, under the facts of this case, the "sexual contact" element of sexual assault necessarily "amount[s] to beginning" the penetration element of sexual intercourse without consent, as contemplated in the "attempt" instruction. Bomar cites to no authority and presents no developed argument regarding this assertion. Thus,

we decline to address it. *See Lewis*, ¶ 44.

¶27 We hold the District Court did not err in denying Bomar's motions for dismissal and for a new trial based on insufficiency of the evidence.

¶28 ***2. Did the District Court err in admitting an expert's testimony regarding the validity of K.J.'s statements contained in a law enforcement officer's report?***

¶29 Bomar advances arguments pertaining to two lines of cases in relation to Beley's testimony regarding her statement validity assessment. One line of cases stems from *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S. Ct. 2786 (1993), relating to a trial court's assessment of the reliability and admissibility of expert testimony under M. R. Evid. 702 and other evidentiary rules. *See e.g. Hulse v. State, Dept. of Justice*, 1998 MT 108, ¶ 52, 289 Mont. 1, ¶ 52, 961 P.2d 75, ¶ 52 (citations omitted). The other line of cases concerns the "Montana rule" that an expert who meets certain criteria may testify regarding the credibility of a child who has allegedly been the victim of sexual abuse when the child testifies at trial and his or her credibility is brought into question. *See State v. Riggs*, 2005 MT 124, ¶¶ 21-22, 327 Mont. 196, ¶¶ 21-22, 113 P.3d 281, ¶¶ 21-22; *State v. Scheffelman*, 250 Mont. 334, 342, 820 P.2d 1293, 1298 (1991); *State v. Geyman*, 224 Mont. 194, 196-201, 729 P.2d 475, 477-80 (1986).

¶30 As noted above, Bomar filed several motions *in limine* together in a single document, four of which pertained to K.J.'s out-of-court statements, Beley's anticipated expert testimony or both. Without going into great detail, these four motions *in limine* overlapped in certain respects, and were less than clear in others. In any event, Bomar discusses only two of these motions in relation to the issue on appeal—the motion to

exclude expert testimony regarding the "ultimate issue," including K.J.'s truthfulness, and the motion to exclude "unqualified expert opinion." Before trial, as noted above, the District Court granted the motion regarding testimony on the ultimate issue of whether Bomar sexually assaulted K.J., and reserved ruling on other aspects of putative expert testimony. At trial, Bomar's counsel only briefly mentioned *Daubert*-related authority—not *Daubert* itself—near the end of the *in camera* hearing and testimony regarding Beley, and the District Court later expressed that it had not "pick[ed] up" a *Daubert*-related challenge to the statement validity assessment at that time. For purposes of our analysis, we need not further detail the sequence of events in the District Court or any confusion that may have arisen in these regards. Accordingly, we include facts below only as necessary to address Bomar's many arguments on appeal.

¶31 One of Bomar's *Daubert*-related contentions is that the District Court erred in failing to hold a pretrial "*Daubert* hearing" regarding Beley's methodology. Apparently relying on *Daubert*'s language regarding a "preliminary assessment" made "at the outset," Bomar asserts that any dispute as to the reliability or validity of such testimony must be resolved before trial. *See Daubert*, 509 U.S. at 592, 113 S. Ct. at 2796.

¶32 Approximately one month before trial, Bomar requested a separate hearing on his previously-filed motions *in limine*, including the "unqualified expert" motion which cited to *Daubert*. The District Court responded it did not have time, and had assumed the motions could be decided without an evidentiary hearing. Defense counsel replied "I think you can do that, Your Honor[.]"

¶33 A party waives the right to appeal an alleged error when the appealing party

11

acquiesced in, actively participated in or did not object to the asserted error. *State v. Smith*, 2005 MT 18, ¶ 10, 325 Mont. 374, ¶ 10, 106 P.3d 553, ¶ 10 (citations omitted). Here, defense counsel acquiesced in the District Court's assumption that it could decide the motions *in limine* without an evidentiary hearing, and raised no issue before or at the beginning of trial regarding the District Court's pretrial order reserving ruling on several expert testimony-related issues. We conclude Bomar waived his right to appeal any alleged error in the District Court's failure to hold a hearing and rule on the *Daubert* issue before trial.

¶34 Alternatively, Bomar challenges the District Court's later reasoning during trial that, although it had not "pick[ed] up" the *Daubert*-related challenge to the statement validity assessment when it ruled on Beley's testimony, her *in camera* testimony established the assessment "would pass muster" under *Daubert*. Bomar does not, however, analyze whether or how Beley's *in camera* testimony regarding the assessment may have failed to satisfy *Daubert*. Thus, we need not address that question.

¶35 Bomar's argument regarding the District Court's trial rulings is that the opinions of defense experts Zook and Scolatti established that Beley's statement validity assessment was not reliable or valid. Zook first testified regarding Beley's assessment during the defense's case-in-chief, well after Beley's testimony was admitted, and Bomar submitted Scolatti's opinions with his motion for a new trial. Bomar advances no authority and presents no developed argument for the proposition that *Daubert* and its progeny require—or even authorize—a trial court to "reverse" the admission of expert testimony based on opposing expert opinions provided after the fact. Moreover, as

12

mentioned above, a party waives the right to appeal regarding an alleged error by a district court when the appealing party acquiesced in, actively participated in or did not object to the asserted error. *See Smith*, ¶ 10. Because Bomar did not present Zook or Scolatti's opinions before Beley testified, we conclude he may not assert error in the District Court's failure to consider those opinions before admitting Beley's testimony.

¶36 Bomar also argues extensively that this Court's jurisprudence erroneously limits application of *Daubert* under Montana law to novel scientific evidence. We need not address this legal argument because, as discussed above, Bomar's *Daubert*-related assertions fail insofar as they are predicated on Zook and Scolatti's late-submitted opinions.

¶37 Next, Bomar asserts that, in light of *Daubert*, we should revisit *Scheffelman*, particularly its criteria for qualifying an expert under the "Montana rule" to testify about the credibility of a child who has allegedly been sexually abused. *See Scheffelman*, 250 Mont. at 342, 820 P.2d at 1298 (citation omitted). Bomar observes the 1989 law review article from which the *Scheffelman* criteria were derived predates *Daubert*. Essentially, his argument is that *Daubert*, as adopted by this Court, supersedes *Scheffelman*. While Bomar suggested in his motion for a new trial that this Court has been "backing away" from the "Montana rule" regarding experts on child credibility, he did not argue in the District Court that *Daubert* has any bearing on *Scheffelman*. Accordingly, because the assertion is raised for the first time on appeal, we do not address it. *See e.g. Vaughn*, ¶ 44 (citation omitted).

¶38 Alternatively, Bomar posits that Beley's *in camera* testimony did not meet the

second *Scheffelman* criterion, which is thorough and up-to-date knowledge of professional literature on child sexual abuse. *See Scheffelman*, 250 Mont. at 342, 820 P.2d at 1298 (citation omitted). He points to Beley's statement that she was not familiar with any literature regarding the reliability of a statement validity assessment of notes taken by a third party, as opposed to an assessment of a child's recorded statements. Bomar contends no such literature exists, but advances no authority or developed argument for the proposition that an expert fails to meet the second *Scheffelman* criterion when he or she admits unfamiliarity with literature that allegedly does not exist. Thus, we decline to address this assertion further. *See Lewis*, ¶ 44.

¶39 Apparently in the alternative, Bomar also points to Zook and Scolatti's opinions that a statement validity assessment may never apply to a third party's account of a child's statement—opinions that appear to be based on interpretations of relevant literature. As with his *Daubert*-related arguments, however, Bomar advances no authority or developed argument for the proposition that *Scheffelman* requires a trial court to "reverse" the admission of expert testimony based on subsequently-provided expert opinions. We conclude Bomar has not established error regarding the second *Scheffelman* criterion.

¶40 Bomar also argues that Montana cases provide that child credibility evidence is admissible only in cases involving "very young children," and asserts K.J. was a competent 12-year-old witness whose credibility could be assessed without expert testimony. Bomar did not make this argument in the District Court, however. We do not consider this issue, as it is raised for the first time on appeal. *See Vaughn*, ¶ 44.

¶41 Finally, some of Bomar's arguments on appeal apparently pertain to the District Court's reasoning regarding Beley's testimony in its order denying his motion for a new trial. Bomar does not clearly differentiate his "trial" and "post-trial" arguments, however. Nor does he set forth any assertion that would lead us to a different conclusion regarding the motion for a new trial than that we have reached in analyzing the District Court's pretrial and trial rulings. We conclude Bomar has not established error in the District Court's denial of his motion for a new trial with respect to Beley's testimony.

¶42 We hold the District Court did not err in admitting Beley's testimony.

¶43 Affirmed.

/S/ KARLA M. GRAY

We concur:

/S/ JOHN WARNER
/S/ W. WILLIAM LEAPHART
/S/ JIM RICE
/S/ BRIAN MORRIS