

DA 07-0731

## IN THE SUPREME COURT OF THE STATE OF MONTANA

## 2009 MT 260

STATE OF MONTANA,

        Plaintiff and Appellee,

v.

DARWIN KEITH BEROSIK,

        Defendant and Appellant.

APPEAL FROM:    District Court of the Eleventh Judicial District,
In and For the County of Flathead, Cause No. DC 05-145C
Honorable Stewart E. Stadler, Presiding Judge

COUNSEL OF RECORD:

        For Appellant:

            Lane K. Bennett, Attorney at Law, Kalispell, Montana

        For Appellee:

            Hon. Steve Bullock, Montana Attorney General; Micheal S. Wellenstein, Assistant Attorney General, Helena, Montana

            Ed Corrigan, Flathead County Attorney; Lori Adams, Deputy County Attorney, Kalispell, Montana

                    Submitted on Briefs:  December 17, 2008

                              Decided:  August 5, 2009

Filed:

_____
                        Clerk

Justice John Warner delivered the Opinion of the Court.

¶1 After trial by jury, Darwin Keith Berosik was convicted of two counts of incest in the District Court of the Eleventh Judicial District, Flathead County. He was sentenced to 30 years in the Montana State Prison with 20 suspended. Berosik raises the following issues on appeal:

¶2 Issue 1: Must the judgment be reversed because Berosik was excluded from individual voir dire?

¶3 We conclude that the answer to the question posed by Issue 1 must be "yes." Thus, Berosik is entitled to a new trial. Although we reverse Berosik's conviction, we deem it appropriate to address other issues, as they are almost certain to arise again upon retrial. *See State v. Michaud*, 2008 MT 88, ¶ 43, 342 Mont. 244, 180 P.3d 636.

¶4 Issue 2: Did the District Court err in determining a child abuse expert was qualified to testify concerning the concept of grooming in child sexual abuse cases?

¶5 Issue 3: Did the District Court err in admitting evidence of prior acts by Berosik?

¶6 Issue 4: Did the District Court err in denying Berosik's motion to suppress evidence which was gathered by his wife?

### FACTUAL AND PROCEDURAL BACKGROUND

¶7 In 1999, Berosik married and began living with Wanda Berosik and her three daughters, R.W., age 9, B.W., age 11, and M.W. age 15. The three girls often accompanied Berosik on his jobs as a truck driver. During these trips, Berosik would discuss puberty,

make comments about the girls' bodies, and tell them they were beautiful. Over time, Berosik's comments became more sexually graphic.

¶8 On his trips with B.W., Berosik would talk to her about prostitutes, inquire into her sexual activity, and promote pornography, specifically books dealing with family members having sex.

¶9 When she was 14, B.W. incurred a telephone bill of $400. Berosik told B.W. she could help pay off her debt if she gave him oral sex. B.W. did not respond. When B.W. was 15, Berosik took her to Disneyland. During this trip, Berosik bought B.W. a vibrator and a pair of fuzzy handcuffs.

¶10 R.W. started riding with Berosik in his truck when she was 10. During trips he spoke to her about sex and promoted pornography. One time, Berosik attempted to grab R.W.'s breast. When R.W. was 12, she told Berosik she was curious to see how a man masturbated. Berosik masturbated in front of her. During later trips, Berosik gave R.W. incest pornography. On a trip to Disneyland, R.W. and Berosik stopped at a convenience store where Berosik asked R.W. to get a prostitute for him. She did as she was asked and then went into the store. When she returned, Berosik asked her if she wanted a prostitute and offered to pay for the service. R.W. declined.

¶11 Berosik bought R.W. several gifts. One was a tank top that Berosik told R.W. to wear without a bra. He also bought her a vibrator and a penis-shaped sucker. He later asked her if she used the vibrator.

3

¶12 In March 2005 when she was 15, R.W. began dating a 26-year-old man named Wesley. Berosik began asking her about sexual activity with her boyfriend. While Wanda and Berosik were out of town, M.W. caught R.W. and Wesley together and told Berosik. Berosik told R.W. to go to his brother's house until he returned. When he picked R.W. up at his brother's, he told her he would not tell Wanda about Wesley but in return, R.W. would have to "do [him] a favor." R.W. testified at trial that she understood this to mean sexual favors because Berosik had requested them before. Berosik told R.W. that to prove she would adhere to the deal, she must take off her shirt and bra. R.W. initially told him no. Berosik then told R.W. that Wesley would have to go to jail if Wanda found out because R.W. was under 16 years old and Wanda would call the police. R.W. took off her shirt and Berosik fondled her breasts. Later that day, Berosik asked R.W. to perform oral sex on him. She said no. Berosik reminded her that Wesley could go to jail. Berosik then masturbated and had R.W. perform oral sex on him. Eventually, R.W. told her mother about Berosik's actions. Her mother told her that she would tell the police but would wait because she needed Berosik's paycheck.

¶13 In March 2005, when B.W. was 16, Berosik caught her sneaking out of the house to see her boyfriend. Berosik told B.W. to take off her shirt and bra or he would take the keys to her car. B.W. did as told, leaving her sweater on. Berosik fondled her breasts. Later, Berosik asked B.W. if she ever performed oral sex. She said yes and put Berosik's penis in her mouth. A couple of nights later, Berosik went into B.W.'s room and fondled her breasts. The next day, Berosik told B.W. that while her mother was away, he wanted to "jump

4

[B.W.'s] bones." B.W. went with her mother to run errands to avoid Berosik. When she returned, Berosik took her car away.

¶14 When Wanda told B.W. about Berosik's actions with R.W., B.W. revealed Berosik's sexual contacts with her. Eventually, Wanda told the police Berosik had sexually assaulted her daughters. She also told the police she had searched their home where she found sex toys and books about incest in B.W. and R.W.'s bedrooms. She boxed up these items and put them in storage. The police told Wanda to bring the box to the sheriff's office. Before she brought the items from the storage shed to the sheriff's department, she searched Berosik's truck and the house again, and found more sexually explicit materials. She delivered all of these items to law enforcement.

¶15 In June 2005, the State filed an information charging Berosik with sexual intercourse without consent. The information was later amended to charge three counts of incest. Count I alleged Berosik had oral sex with B.W. Count II alleged he had oral sex with R.W. The offenses were alleged to have occurred in March 2005. Count III was severed and is not a part of this appeal.

¶16 The affidavit in support of the information contained the statements provided by R.W. and B.W. concerning the bargains Berosik had made with them about the alleged incest (that he would turn in R.W.'s boyfriend and take away B.W.'s car if they did not have oral sex with him) and the resulting sexual acts.

¶17 The charges against Berosik were first tried in June 2006. The trial resulted in a hung jury. A second trial was scheduled. Before the second trial, the State filed notice of its

intent to introduce other acts evidence pursuant to M. R. Evid. 404(b) and/or the transaction rule. The State gave notice that it would seek to introduce into evidence the incest pornography books, fuzzy handcuffs, and vibrators. The State also proposed to introduce the testimony of R.W. and B.W. concerning the prior sexual contacts and suggestive comments Berosik made to them. The State asserted this evidence was a part of the incest transactions as it proved that Berosik was grooming the girls so as to make it easier for him to later sexually assault them. The State also proposed to introduce expert testimony to assist the jury in understanding the concept of grooming, which the State avers is grounded in sound research.

¶18 Berosik moved *in limine* to exclude the physical and testimonial evidence of grooming as inadmissible character evidence because the acts were remote in time and did not fall within the exceptions of M. R. Evid. 404(b). He also moved to exclude the expert testimony, claiming the expert was not qualified.

¶19 Berosik also filed a motion to suppress the evidence gathered by his wife Wanda. Berosik argues that Wanda acted as an agent of the State when she searched his home and, because the police failed to obtain a search warrant, the items were illegally seized.

¶20 The District Court denied all of Berosik's motions to exclude evidence.

¶21 A second jury trial was held in March 2007. The District Court determined it would conduct individual voir dire of venirepersons who had personal experience with child or sexual abuse. Berosik claims on appeal he was excluded from the individual voir dire conducted in the judge's chambers.

6

¶22 During the trial, before ruling on Berosik's motion to exclude grooming evidence, the court heard the testimony of the State's proposed child abuse specialist outside the presence of the jury. After hearing the witness's testimony, the District Court either admitted or excluded each part of the proposed prior acts evidence listed in the State's notification. The District Court based its decisions on whether the evidence went to show grooming, which the court considered as included as part of the transaction of the charged incest, or whether it fit under an exception to M. R. Evid. 404(b). In a few instances, the District Court concluded the evidence was admissible under both rules.

¶23 The District Court allowed testimony regarding Berosik's prior comments about prostitutes; Berosik masturbating in front of R.W. in 2001; Berosik's discussions about puberty, the girls' bodies, their sexual activity, pornography and sex; his distribution of pornography; Berosik's proposition in 2003 that B.W. perform oral sex to pay off her debt for the phone bill; Berosik's statements that he would like to "make love to" R.W. and that B.W. was to "jump [his] bones"; Berosik fondling B.W. and R.W.; Berosik's mandate that the doors to R.W. and B.W.'s bedrooms not be locked; and Berosik's request to Wanda that their bedroom remain open while they had sexual intercourse while the girls were present in the home.

¶24 The District Court ruled that the physical evidence—incest pornography books, fuzzy handcuffs, and a vibrator—would not be admitted into evidence because it was too prejudicial. However, the District Court ruled that the girls could testify about what they got, what they saw, what they perceived, what their impression was, and how it affected them.

7

¶25 The State's expert witness then testified before the jury on the general characteristics of grooming a child for sexual abuse. As a part of her testimony, she stated she did not express an opinion on Berosik's or any witnesses' credibility.

¶26 The jury found Berosik guilty of both counts of incest. The District Court sentenced him as noted above, and he appeals.

## STANDARDS OF REVIEW

¶27 Whether a district court has violated a criminal defendant's right to be present at all critical stages of the defendant's trial is a constitutional matter, thus our review is plenary. *State v. Price*, 2009 MT 129, ¶ 19, 350 Mont. 272, 207 P.3d 298.

¶28 Rulings regarding the admissibility of evidence are left to the sound discretion of the trial court, and will not be overturned absent a showing of an abuse of discretion. *State v. Bar-Jonah*, 2004 MT 344, ¶ 97, 324 Mont. 278, 102 P.3d 1229; *State v. Ford*, 278 Mont. 353, 361, 296 P.2d 245, 249-50. The abuse of discretion standard also applies in reviewing a trial court's decision whether to admit evidence of other crimes, wrongs or acts. *See State v. Crosley*, 2009 MT 126, ¶ 26, 350 Mont. 223, 206 P.3d 932; *Bar-Jonah*, ¶ 97; *State v. Aakre*, 2002 MT 101, ¶ 8, 309 Mont. 403, 46 P.3d 648 (concerning admission of evidence of other acts of a defendant under M. R. Evid. 404(b)).

¶29 We review a district court's denial of a motion to suppress to determine whether the findings of fact are clearly erroneous, and whether the court correctly applied those facts as a matter of law. *State v. Hilgendorf*, 2009 MT 158, ¶ 11, 350 Mont. 412, 208 P.3d 401.

## DISCUSSION

8

¶30    *Issue 1:   Must the judgment be reversed because Berosik was excluded from individual voir dire?*

¶31    Berosik asserts on appeal that he was not present during the individual, in-chambers voir dire.  The record does not reflect whether Berosik was present when the court examined potential jurors in chambers.  The trial transcript shows that the district judge announced individual voir dire would be held in chambers and then said, "We will meet with counsel in [chambers] one at a time."  The minutes of the Clerk of Court do not indicate that Berosik was present.  The State offers nothing to rebut Berosik's claim he was not present during the individual, in-chambers voir dire.

¶32    A defendant's right to be present during all stages of a criminal prosecution is a fundamental right guaranteed by the Montana and United States Constitutions.  *State v. Bird*, 2001 MT 2, ¶¶ 23-24, 308 Mont. 75, 43 P.3d 266.  A defendant has the right to be present during critical stages of the proceeding and at all times during the trial when something is done which affects his right to a fair trial.  *State v. Reed*, 65 Mont. 51, 56-57, 210 P. 756, 757 (1922).  Conducting individual voir dire in chambers is a critical stage of the trial.  *Bird*, ¶ 28.  Because errors involving jury selection affect the fairness of the trial, excluding a defendant from in-chambers voir dire absent an express waiver on the record is structural error, which requires reversal.  *Bird*, ¶¶ 39-40.

¶33    The record does not show that Berosik was present during the in-chambers voir dire.  The parties do not dispute that Berosik did not waive his presence.  Applicable precedent

instructs that Berosik's exclusion from chambers during individual voir dire constituted structural error. The conviction must be reversed and the case remanded for a new trial.

¶34 *Issue 2: Did the District Court err in determining the child abuse expert was qualified to give her opinion?*

¶35 Berosik asserts that the District Court erred in allowing the State's child abuse expert to testify because she did not have extensive first hand experience with sexually and non-sexually abused children, did not have a thorough and up-to-date knowledge of the professional literature on child sexual abuse, and was not objective and neutral about this case. *See State v. Scheffelman*, 250 Mont. 334, 342, 820 P.2d 1293, 1298 (1991); *State v. Riggs*, 2005 MT 124, ¶ 27, 327 Mont. 196, 113 P.3d 281.

¶36 The record reveals that the State's expert is a licensed marriage and family counselor with a Master's degree and she has commenced a dissertation on disclosure of child sexual abuse. She has extensive experience in working with those convicted of offenses involving sexual aggression, providing sex offender treatment to both adults and juveniles, and providing family and group counseling to those dealing with sex offenses as well as persons dealing with non-sexual child abuse. She has conducted thousands of forensic interviews and testified as an expert in several states, including Montana.

¶37 After examination of the record we conclude the District Court did not abuse its discretion in allowing the expert to present her opinions to the jury.

¶38 *Issue 3: Did the District Court err in admitting evidence of prior acts by Berosik?*

¶39 The State's expert witness described the characteristics of what constitutes the grooming of potential child victims of sexual abuse. The District Court then allowed the complaining witnesses, B.W., R.W., and others, to testify about prior acts of Berosik, which occurred over the course of the several years of his relationship with the victims. The District Court ruled these prior acts were evidence that Berosik was grooming his intended child victims, and thus were a part of the transactions the State sought to prove.

¶40 On appeal, Berosik contends the expert testimony on grooming was improperly admitted as it is not relevant under M. R. Evid. 401, and is highly prejudicial profiling evidence which should be excluded pursuant to M. R. Evid. 403.

¶41 In Montana, expert testimony explaining the complexities of child sexual abuse for the purpose of assisting jurors in understanding and evaluating a child's testimony is admissible. *State v. Morgan*, 1998 MT 268, ¶ 29, 291 Mont. 347, 968 P.2d 1120; *State v. Donnelly*, 244 Mont. 371, 378, 798 P.2d 89, 93 (1990), *overruled on other grounds, State v. Imlay*, 249 Mont. 82, 91, 813 P.2d 979, 985.

¶42 The testimony of the State's expert witness gave general information about grooming; that is, the process of eroding a victim's boundaries to physical touch and desensitizing them to sexual issues. Her testimony concerned a subject about which lay persons would have little or no experience. She based her opinions on her experiences and research in the field. The expert testimony is relevant in that it provided the jury with information about how research and experience shows abuse of a child oftentimes does not occur all of a sudden. It provided evidence that young victims sometimes delay in disclosing abuse, disclose the

11

abuse piecemeal, and described how they react to having been sexually abused. Berosik's defense was that Wanda and her daughters fabricated their allegations against him because they wanted to be rid of him for taking away the daughters' new-found freedom and because he was going to expose consensual sex with a boyfriend, which would result in criminal charges against him. In the face of this defense, a jury could conclude the evidence is probative in judging the credibility of the State's witnesses, including B.W. and R.W, and the decision whether the charges had, or had not, been proven beyond a reasonable doubt.

¶43 In deciding the admissibility of evidence of other acts of a defendant, a district court must weigh whether the evidence's probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, misleading the jury, a waste of time, or is needless presentation of cumulative evidence. M. R. Evid. 403; *State v. Matt*, 249 Mont. 136, 142, 814 P.2d 52, 56 (1991). The evidence in this case concerning whether Berosik groomed B.W. and R.W. for sexual abuse, as well as whether Berosik committed the specific acts of incest alleged, is not so prejudicial that it is unfair. He has the opportunity to rebut such evidence. Nor is it confusing or misleading. The District Court did not abuse its discretion in admitting such evidence under M. R. Evid. 403.

¶44 The State argues that the evidence of prior sexual activity between Berosik and his stepdaughters, which occurred before the charged offenses, is part of the transaction of the alleged incest, and can be properly admitted as a part of the transaction under § 26-1-103, MCA.

¶45 Section 26-1-103, MCA, provides that prior acts of an accused may be admissible as a part of an alleged criminal transaction when those acts form part of the transaction which is itself the fact in dispute, or if they are evidence of that fact. Generally, admissibility under the transaction rule is predicated on the jury's right to hear what happened prior to the alleged offense, so that it may evaluate the evidence in the context in which the alleged criminal act occurred. *See State v. Derbyshire*, 2009 MT 27, ¶ 29, 349 Mont. 114, 201 P.3d 811. To be admissible under the transaction rule, evidence must be explanatory of the charged offense. *Derbyshire*, ¶ 36. Evidence of acts admitted under § 26-1-103, MCA, is not character evidence excluded by M. R. Evid. 404(b). Likewise, such evidence is not subject to the notice and other requirements of § 46-13-109, MCA, because the acts are considered to be part of the transaction and not wholly independent of the alleged offense. *Crosley*, ¶ 48.

¶46 The transaction rule must not be expanded to the point that the prohibition of character evidence under M. R. Evid. 404(b) is swallowed. *See Crosley*, ¶ 67 (Nelson & Cotter, JJ., specially concurring). To this end, if evidence of prior acts is to be admitted as a part of the alleged offense, such other acts of the accused are to be linked to, and explanatory of, the charged offense. *Crosley*, ¶ 48 (citing *State v. Lozon*, 2004 MT 34, ¶ 12, 320 Mont. 26, 85 P.3d 753).

¶47 In this case, like in *Crosley*, the evidence of Berosik's sexually charged conversations, transactions and contacts with his victims, as described in ¶ 22 and ¶ 23 above, were closely linked to and explanatory of the charges. Berosik's sexualization of his stepdaughters began

13

shortly after he married their mother and continued up to the time the charged incest was reported. Thus, evidence of Berosik's escalating sexual acts with these children form a part of the transactions in dispute and are admissible under § 26-1-103, MCA. *See Crosley*, ¶ 49.

¶48 *Issue 4: Did the District Court err in denying Berosik's motion to suppress the evidence gathered by Berosik's wife?*

¶49 Berosik contends that a sheriff's deputy requested Wanda to bring in the items she gathered in her home and Berosik's truck, and thus, she acted as an agent of the State. As no search warrant was issued, Berosik asserts the search of the home and truck and the seizure of these items is illegal, thus evidence of their existence must be suppressed.

¶50 The exclusionary rule does not apply to private searches that do not involve state action, as it does not serve to deter private individuals from engaging in searches that would be illegal if conducted by law enforcement. *State v. Malkuch*, 2007 MT 60, ¶ 13, 336 Mont. 219, 154 P.3d 558 (citing *State v. Long*, 216 Mont. 65, 71, 700 P.2d 153, 157 (1985); *State v. Christensen*, 244 Mont. 312, 319, 797 P.2d 893, 897 (1990)).

¶51 Wanda and her daughter had already seized the books and sex toys and removed them from the home before they contacted law enforcement. And, though the sheriff's deputy requested that Wanda bring these items in, he did not ask her to seize more items from the home, nor did he suggest to her that Berosik's truck be searched. The District Court correctly concluded that the actions of Wanda and her oldest daughter were private searches neither requested nor agreed to by law enforcement, and therefore the evidence obtained is not subject to the exclusionary rule. *See Malkuch*, ¶ 16.

14

**CONCLUSION**

¶52    The judgment of the District Court is reversed and remanded for a new trial conducted in conformity with applicable law and this opinion.


/S/ JOHN WARNER

We Concur:

/S/ W. WILLIAM LEAPHART
/S/ BRIAN MORRIS
/S/ JIM RICE


Justice James C. Nelson, specially concurring.

¶53    I join the Court's Opinion on Issues 1 and 2. In particular, as to Issue 1, I agree that errors involving jury selection are structural errors which require automatic reversal. Opinion, ¶ 32; *State v. Matt*, 2008 MT 444, ¶¶ 31-32, 40, 347 Mont. 530, 199 P.3d 244. But I specially concur as to Issues 3 and 4. In addition, I note, as a preliminary matter, that the Court's statement of the standard of review is incorrect, or at least incomplete.

**Standard of Review**

¶54    The Court states that "[t]he abuse of discretion standard also applies in reviewing a trial court's decision whether to admit evidence of other crimes, wrongs or acts" under M. R. Evid. 404(b). Opinion, ¶ 28; *accord State v. Campa*, 2009 MT 251, ¶ 15, ___ Mont. ___, ___ P.3d ___. It is true, and we have often stated, that a trial court's evidentiary rulings are reviewed for abuse of discretion. *See e.g. State v. Crosley*, 2009 MT 126, ¶ 26, 350 Mont. 223, 206 P.3d 932; *State v. Herman*, 2009 MT 101, ¶ 19, 350 Mont. 109, 204 P.3d

15

1254; *State v. Clark*, 2008 MT 419, ¶ 13, 347 Mont. 354, 198 P.3d 809; *State v. Stearns*, 2008 MT 356, ¶ 13, 346 Mont. 348, 195 P.3d 794.

¶55    But there is no "discretion" in properly interpreting a statute or rule of evidence. *See State v. Mizenko*, 2006 MT 11, ¶ 8, 330 Mont. 299, 127 P.3d 458; *Hagener v. Wallace*, 2002 MT 109, ¶ 12, 309 Mont. 473, 47 P.3d 847. The court's interpretation is either correct or incorrect. *Cf. State v. Swann*, 2007 MT 126, ¶ 19, 337 Mont. 326, 160 P.3d 511 ("There either is, or is not, sufficient evidence to convict, and the determination is not a matter of discretion."). Indeed, it is beyond cavil that the interpretation of a statute or rule constitutes a conclusion of law, which we review de novo. *See State v. Dunning*, 2008 MT 427, ¶ 22, 347 Mont. 443, 198 P.3d 828; *State v. Triplett*, 2008 MT 360, ¶ 13, 346 Mont. 383, 195 P.3d 819; *Miller v. District Court*, 2007 MT 149, ¶ 22, 337 Mont. 488, 162 P.3d 121; *Faulconbridge v. State*, 2006 MT 198, ¶¶ 46-57, 333 Mont. 186, 142 P.3d 777; *Mizenko*, ¶ 8.

¶56    Accordingly, we have stated—repeatedly—that to the extent a trial court's evidentiary ruling is based on the interpretation of a statute or rule, our review is de novo. *See State v. Derbyshire*, 2009 MT 27, ¶ 19, 349 Mont. 114, 201 P.3d 811; *State v. Mackrill*, 2008 MT 297, ¶ 37, 345 Mont. 469, 191 P.3d 451; *State v. Bomar*, 2008 MT 91, ¶ 14, 342 Mont. 281, 182 P.3d 47; *State v. Gittens*, 2008 MT 55, ¶ 10, 341 Mont. 450, 178 P.3d 91; *State v. McOmber*, 2007 MT 340, ¶ 10, 340 Mont. 262, 173 P.3d 690; *State v. Skinner*, 2007 MT 175, ¶ 15, 338 Mont. 197, 163 P.3d 399; *In re T.W.*, 2006 MT 153, ¶ 8, 332 Mont. 454, 139 P.3d 810; *State v. Price*, 2006 MT 79, ¶ 17, 331 Mont. 502, 134 P.3d 45; *State v. Incashola*, 1998 MT 184, ¶ 9, 289 Mont. 399, 961 P.2d 745.

16

¶57 Here, the evidentiary rulings at issue were based on the trial court's interpretation of § 26-1-103, MCA, and M. R. Evid. 404(b); i.e., they were based on conclusions of law. Our review of those rulings, therefore, is plenary. *Bomar*, ¶ 14.

**Issue 3**

¶58 With respect to Issue 3, I completely agree with the Court that the transaction rule[1] "must not be expanded to the point that the prohibition of character evidence under M. R. Evid. 404(b) is swallowed." Opinion, ¶ 46. I believe that here, however, Berosik's prior acts (e.g., the sexually charged conversations and contacts with his stepdaughters) during the years preceding the charged offenses do not "form[ ] part of a transaction which is itself the fact in dispute." Section 26-1-103, MCA. The "transaction which is itself the fact in dispute" is whether Berosik had sexual intercourse with B.W. and R.W. in March 2005. Section 45-5-507(1), MCA (defining incest). None of those earlier events form part of this alleged transaction.

¶59 Likewise, evidence of Berosik's prior acts is not "evidence of [the fact in dispute]." Section 26-1-103, MCA. Berosik could be guilty of having sexual intercourse with his stepdaughters in March 2005 irrespective of whether he committed the prior acts. In other words, the prior sexually charged conversations and contacts with his stepdaughters are in no way " 'inextricably linked to' " the question of whether he had sexual intercourse with the

---

[1] "Where the declaration, act, or omission forms part of a transaction which is itself the fact in dispute or evidence of that fact, such declaration, act, or omission is evidence as part of the transaction." Section 26-1-103, MCA.

girls in March 2005.[2] *Crosley*, ¶ 48 (quoting *State v. Lozon*, 2004 MT 34, ¶ 12, 320 Mont. 26, 85 P.3d 753).

¶60 For these reasons, I cannot agree with the Court's reliance on the transaction rule, and I fear that we are again reading § 26-1-103, MCA, more broadly than its language allows, contrary to the first maxim of statutory interpretation: "In the construction of a statute, the office of the judge is simply to ascertain and declare what is in terms or in substance contained therein, not to insert what has been omitted or to omit what has been inserted." Section 1-2-101, MCA. The State did not charge a continuing course of conduct. It charged two specific instances of conduct alleged to have occurred in March 2005. Berosik's sexually charged conversations and contacts with his stepdaughters at other times and places simply do not "form[ ] part of" the instances of sexual contact in March 2005. Section 26-1-103, MCA. The maverick Pac-Man has blipped to yet another case. *Crosley*, ¶ 67 (Nelson & Cotter, JJ., specially concurring).

¶61 This is not to say that evidence of Berosik's prior acts is per se irrelevant or inadmissible. To the contrary, I believe that the evidence of "grooming" proffered by the State in this case was probative of his guilt. But for the reasons stated above, I must disagree

---

[2] The Court omits the critical qualifier "inextricably" and inserts a new qualifier: "closely." *See* Opinion, ¶¶ 46, 47 ("[T]he evidence of Berosik's [prior acts] . . . were closely linked to and explanatory of the charges."). Yet, while our transaction-rule jurisprudence is far from a model of clarity, we have at least been consistent in requiring that the evidence be "inextricably" or "inseparably" linked to the charged offense, not merely "closely" linked. *See Derbyshire*, ¶¶ 31-32; *see also Crosley*, ¶ 71 (Nelson & Cotter, JJ., specially concurring), and cases cited therein.

with the Court that such evidence is admissible because it "forms part of a transaction which is itself the fact in dispute or evidence of that fact." Section 26-1-103, MCA.

¶62 In its Notice of Intent to Introduce Other Acts Evidence Pursuant to M. R. Evid. 404(b) and/or the "Transaction Rule," the State argued a "complete the story" rationale for admitting the evidence of Berosik's prior acts under the transaction rule. Yet, a "complete the story" or "explain the circumstances" definition of the transaction rule threatens to override M. R. Evid. 404(b).

> A defendant's bad act may be only tangentially related to the charged crime, but it nevertheless could "complete the story" or "incidentally involve" the charged offense or "explain the circumstances." If the prosecution's evidence did not "explain" or "incidentally involve" the charged crime, it is difficult to see how it could pass the minimal requirement for admissibility that evidence be relevant. . . . [A]ll relevant prosecution evidence explains the crime or completes the story. The fact that omitting some evidence would render a story slightly less complete cannot justify circumventing Rule 404(b) altogether. Moreover, evidence necessary to complete a story—for instance by furnishing a motive or establishing identity—typically has a non-propensity purpose and is admissible under Rule 404(b). We see no reason to relieve the government and the district court from the obligation of selecting from the myriad of non-propensity purposes available to complete most any story.

*United States v. Bowie*, 232 F.3d 923, 928-29 (D.C. Cir. 2000) (paragraph break omitted).

¶63 In my view, therefore, the correct approach is to analyze the admissibility of the evidence of Berosik's prior acts pursuant to Rule 404(b), which the prosecutor did as an alternative ground for introducing the evidence. In this regard, while I do not conduct here a comprehensive analysis under Rule 404(b), I tend to agree with the prosecutor's argument that the evidence of Berosik's grooming of his stepdaughters may constitute "preparation" under Rule 404(b).

19

**Issue 4**

¶64    I concur in the result of Issue 4 based on the caselaw cited in ¶ 50 and the facts discussed in ¶ 51.  Importantly, Berosik has failed to present a persuasive argument on appeal that Wanda lacked authority to search for and seize evidence from Berosik's truck. Moreover, Berosik has no standing to prevent Wanda from seizing and turning over to law enforcement the various sex toys and "gifts" which he gave to the girls.  Those items belonged to them and were no longer his. *See State v. 1993 Chevrolet Pickup*, 2005 MT 180, ¶¶ 14-17, 328 Mont. 10, 116 P.3d 800 (once a person voluntarily relinquishes or intentionally abandons his property, his expectation of privacy in that property is abandoned as well). Finally, Berosik fails to argue effectively that private searches violate Article II, Sections 10 and 11 of the Montana Constitution and, therefore, that the exclusionary should apply.

¶65    On the foregoing basis, I concur.


                                                                /S/ JAMES C. NELSON